Merle D. VINCENT, Jr., Regional Director of the Third Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL NO. 106, INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL–CIO, Respondent.

Civ. No. 8948.

United States District Court
N. D. New York.

June 9, 1962.

Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Julius G. Serot, Asst. General Counsel, Thomas H. Ramsey, Regional Attorney, Region 3, Clifford M. Roth, Attorney, National Labor Relations Board, Buffalo, N. Y., for petitioner.

Sol Rubenstein, Albany, N. Y., for respondent.

JAMES T. FOLEY, District Judge.

This proceeding, now not uncommon in the District Courts, is based upon the petition of the Regional Director for a temporary injunction pending the final disposition of unfair labor practice charges by a contractor's association against the respondent union. The petition has the usual statements of facts and law, set forth in detailed and somewhat intricate combination, to support the alleged charges that the respondent has engaged in, and is engaging in, such acts and conduct violative of Section 8(b) (4) (i) (ii), subparagraphs B and D of the Act, 29 U.S.C.A. § 158(b) (4) (i, ii) (B, D).

■ I find here, as I did in the few proceedings of this kind that I have had previously, that the black and white evaluation of the facts preliminarily set forth in the supporting memorandum at the time the petition was filed becomes somewhat blurred when opposition by the union respondent develops and hearing is held. Such happened in this instance. Extensive hearings were held on April 10 and 11, 1962, and the respondent contested strenuously, and at times bitterly, the proof offered in support of the allegations of unfair labor practices made by the petitioner and charging party. The strong test of cross-examination in open court hearing brought inconsistencies and contradictions and raised some imperfections in the factual basis relied upon by the petitioner. Any judge even of limited trial experience expects such counterattack to weaken previous unassailed testimony. He must do his best to unravel the confusion in the search for the truth and perform his function as finder of the fact. There is always present in these labor proceedings, from my scant contact with them and unspecialized viewpoint, overtones of emotion and passion that tend to color testimony even more than usual. One becomes cognizant that extreme partisanship and interest exist on both sides of the controversy in this delicate area of employer and union responsibility so necessary to be balanced fairly in the national interests. A substantial transcript of 247 pages resulted from the two-day hearing, and it has been furnished to me by the attorney for the respondent. I have canvassed its contents several times.

The dispute and charges arose from events that transpired at the job site of a multi-million-dollar cement plant being constructed at Ravena, New York, occurring particularly during the months of February and March, 1962. The focal point of the charges and petition here filed is a basic and simple dispute between the respondent Engineers Union and Local 1294, International Brotherhood of Electrical Workers. As the evidence at the hearing developed it, there is one line truck at the job site with a detachable boom, at times called a winch truck, or an A-frame winch truck, upon and from which a crew of outside electrical workers called linemen or high-liners do their work for their employer, E. C. Ernst. It is the claim of the engineers that when this single boom or winch is used for lifting or hoisting, an engineer should supervise and operate it instead of the driver of the line truck as now done by the driver, a member of the Electrical Workers Union. It is apparent the employer Ernst is caught in an unpleasant cross-fire of inter-union dispute. However, despite this simplicity, it must be gleaned from this substantial record, without regard in my judgment, to similar happenings in other parts of the nation, whether there is reasonable cause to believe that unfair labor practices existed at this particular site at these particular times that should be enjoined now and in the future pending decision of the Board on the merits.

The elements of the statute involved must have some reasonable support of direct proof or enough to permit sensible inference indicating improper conduct by the respondent violating the two separate statutory prohibitions. The proof must show that the so-called secondary boycott and jurisdictional dispute provisions were violated.

The proof as to express demand being made by the Engineers' Union upon Ernst to be recognized for the single job con-

cerning the operation of the A-frame winch on the one truck used by the electricians in their work is not clear in the record. The testimony of Bartolet, general superintendent for Ernst, is cloudy on the issue, and question remains as to whether or not he initiated and stimulated negotiations with members of the respondent engineers in relation to a fork-lift truck. His testimony as to Bundy and Orsulich, members of the respondent union, compounded the confusion because one, Orsulich, was a representative of the union as a Shop Steward, and Bundy was not, but was a master mechanic for Darin & Armstrong, Inc. on the job. The conduct of the respondent to be weighed drifts and intermingles into alleged violations of both provisions of the statute. It is arguable that substantial suspicion is present that the day and a half stoppage by the respondent engineers testified to in the record was done to pressure Darin & Armstrong to stop assisting Ernst in any hoisting and lifting problems at the construction site. However, plausible explanation is offered that the stoppage was directed at the primary employer for lack of proper safety conditions or for running a pump over a weekend without a member of the respondent union operating it. Mr. Collins of Darin & Armstrong indicated reasonably he made his own mind up not to deal with Ernst.

The Gridley episodes are also suspicious, but the results obtained by pressure there, if it be the fact, have since been erased. In the brief of Judge Rubenstein, submitted to me in behalf of the respondent, it is stated that Mr. Bartolet testified at a hearing held before an examiner of NLRB on the 10(k) charges April 24, 1962 that the two oil circuit breakers have since been removed by Gridley with equipment operated by members of the respondent union and are in place at the outdoor substation at the project site. The failure to obtain unloading and delivery of the two circuit breakers was a major reason of concern for the presentation of the charges by Ernst and the filing of this petition for injunction. It was testified at the hearing before me that the removal and placing of the circuit oil breakers sought by Ernst needed the combined effort of the operating engineers of Gridley and the linemen of Ernst. Apparently, on or before April 24, 1962, these groups cooperated in their work and are getting along without new dispute.

The other events testified to in the record offered as proof of unfair practices by the respondent are not too clear as to the personnel involved, whether there was discussion between employer and employee or between employees only in the rough and tumble occurrences that always happen on construction jobs. As I read the record it was also stated that if the circuit breakers were put in place, then the hoisting and lifting by the A-winch could satisfy the requirements of the outside linemen until the completion of their work on the project. From a practical viewpoint I am not inclined at the present time to view this matter with the serious apprehension that existed in the mind of the Regional Director and his able counsel when the petition for injunction was filed. I do agree, of course, that a minimum is ordinarily required to support the principle of reasonable cause to believe that unfair labor practices exist that should be restrained until the Board acts upon the merits of the dispute. There is excellent and reasoned discussion of this principle by our new Judge of the Court of Appeals, Second Circuit, Judge Marshall, in McLeod, Regional Director v. Business Machine and Office Appliance Mechanics Conference Board, etc., 2 Cir., 300 F.2d 237. The opinion cautions careful interpretation of Section 10($l$) of the National Labor Relations Act, 29 U.S. C.A. § 160($l$), involved here in order that the general counsel and the Federal District Courts may not become in reality the actual focal points of unfair labor practice adjudications.

To weigh the alleged conduct of the respondent union in reference to secondary boycott, the reasoning of the Court of Appeals, Second Circuit, must

again be applied that inducement and encouragement addressed to management will not suffice, but threats, coercion or restraints are necessary. Therein also the question is discussed as to the status of the workers who are induced and encouraged in violation of the statute in this respect. (N. L. R. B. v. Local 294 Int. Brotherhood of Teamsters, etc., 2 Cir., 298 F.2d 105).

■ I believe that the institution of this proceeding and the hearings held have already accomplished the desired result. In my judgment,—and of course it is not substituted for the considered and expert judgment of the officers of the Board who have the responsibility to so determine the necessity to file for injunction,—there is no serious harm evident now which may be irremediable under ordinary procedures provided by the statute. (Douds v. Milk Drivers and Dairy Employees' Union, etc., D.C., S.D. N.Y., 154 F.Supp. 222, 236). It has always been my firm conviction that injunctions should never issue in a perfunctory manner, and in this respect the reasoning of good authority states that there is a permissive range for the exercise of discretion in the granting of injunctive relief in these situations. (United Brotherhood of Carpenters, etc. v. Sperry, 10 Cir., 170 F.2d 863, 869; Douds v. Wine, Liquor and Distillery Workers Union, Local 1, S.D.N.Y., 75 F.Supp. 447). The highest authority in Hecht Co. v. Bowles, 321 U.S. 321, 328, 64 S.Ct. 587, 88 L.Ed. 754, under a different statute but involving injunctive relief, gives common sense guidance that in some situations the fairest course to follow is to avoid the issuance of an injunction under certain circumstances and retain the matter upon the docket with the right on notice to renew application for injunctive relief if violations recurred. To me this seems the sensible thing to do now. The hearings on the merits of the charge that will resolve the disputes between the two unions causing these flareups have now been held. If speed is necessary to protect the interest of the employers on this major construc-

tion the administrative boards should hasten their processing. We do not have here any evidence similar to the extreme situation where the operating engineers obstructed a line truck by standing in front of it. (Cuneo v. Local 825 Int. Union of Operating Engineers, etc., 3 Cir., 300 F.2d 832.) I do agree with Mr. Roth, Attorney for the National Labor Relations Board, that the decision of a joint board favoring the operating engineers here over the electrical workers in the operation of the A-frame winch would not justify demand and pressure upon Ernst for assignment of such work to an operating engineer overriding his contract with the electrical workers. The decisions of the NLRB submitted to me by Mr. Roth clearly show that such decisions of the joint board are only a factor that might be weighed in the determination of the work assignment. Each of these cases seems to turn on the particular facts involved as to the final decision of assignment. (C. A. Turner Co., 119 N.L.R.B. 339; Fluoro Electric Co., 128 N.L.R.B. 725; Frank P. Badolato & Son, 135 N.L.R.B. No. 140).

The attorney for the Board, Mr. Roth, whom I found to be a competent, courteous and reasonable government counsel in the highest sense of that description during the negotiations, indicated on the record of the hearing that the government was mainly interested in a written stipulation that the engineers would do work for Ernst, and in the interest of compromise the government would not press for a written stipulation for injunction. (Tr. 116.)

For the reasons stated herein, the petition for injunction is denied at this time, but because of the apprehension of the Regional Director and his counsel, that may be justified, this petition shall remain on the docket of this Court with the right accorded the Regional Director to renew the application for injunctive relief on proper notice if unfair labor practices, in his judgment, are committed in the future by the respondent on this particular job site and involving these

two particular unions on the issues now present. (See Douds v. Milk Drivers & Dairy Employees Local No. 680 (D.C. N.J.), 133 F.Supp. 336, 342.)

It is so ordered.