**UNITED STATES of America**

v.

**WILLIAM B. MANDELL COMPANY,**
a corporation.

**Civ. A. No. 37441.**

United States District Court
E. D. Pennsylvania.

March 19, 1965.

Drew J. T. O'Keefe, U. S. Atty., Sullivan Cistone, Ass't. U. S. Atty., Philadelphia, Pa., for plaintiff.

Harry Shapiro, Philadelphia, Pa., for defendant.

HIGGINBOTHAM, District Judge.

Plaintiff has filed this action against the defendant pursuant to Section 3 of 8(d) of the Perishable Agricultural Commodities Act of 1930, as amended (7 U.S.C. §§ 499c, 499h(d).) In substance it is alleged that although subject to the requirement that it have a Department of Agriculture license pursuant to the Perishable Agricultural Commodities Act of 1930, supra, defendant, William B. Mandell Company, has nevertheless been operating this business without a license since March 1964. In fact, on the record, defendant's present counsel admitted Mandell's continuous violation of the Act, in that defendant still daily operates without a license.[1]

Defendant's sole defense was predicated on the ground that this wilful violation should not be subject to an injunction because the District Court has discretion to "balance the convenience of the parties and the possible injuries to them as they may be effected by the granting or withholding of the injunction." (Defendant's Memorandum of Law, p. 11.) Defendant cites as controlling authority Hecht Company v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944), and other cases pertaining to the Fair Labor Standards Act, the National Labor Relations Act, the Labor Management Relations Act of 1947, and the Civil Rights Act. I find none of these cases controlling in the instant situation.[2]

In contrast to defendant's position that the Court has discretion in this situation, the plaintiff strongly urges that as a matter of law the Court can never refuse to issue an injunction under Section 499h (d) once a continuing violation has been found. Plaintiff's argument is based on the statutory language which provides that "no person shall" operate without a license, and that "if the court shall find that the defendant is continuing to engage in such business without a valid and effective license, *the court shall issue an injunction* to restrain such defendant from continuing to engage in or to operate such business without such license."[3]

All parties agree that there are no reported cases construing Section 499h(d) as to whether there is any ambit of discretion permitting a District Court to refuse to issue an injunction when there are continuing violations of the statute. But as I view the evidence, the issuance of an injunction here need not be contingent upon whether my obligation is mandatory. Even assuming arguendo, that there is discretion to refuse an injunction, I would nevertheless issue one based

1. In March 1964, defendant filed with the Department of Agriculture an application for a license under the Perishable Agricultural Commodities Act of 1930, supra. The Director of the Fruit and Vegetable Division, Agricultural Marketing Services, United States Department of Agriculture, in response to this application, filed a notice to show cause why a license should not be issued, and by stipulation the matter was presented to the hearing examiner on the basis of records developed in a disciplinary and notice to show cause proceeding against a corporation in which William B. Mandell had been one of the principal officers —Mandell, Spector, Rudolph Company.

On December 8, 1964, the hearing examiner issued a proposed order that the application for a license be denied. Timely appeals and exceptions have been filed by the defendant to the hearing examiner's proposed order.

The procedural route in these matters after determination by the Department of Agriculture is an appeal to a Court of Appeals. 5 U.S.C. § 1032.

2. The cases relied on by the defendant are as follows: Fair Labor Standards Act: Fitzgerald v. Sanford, 142 F.2d 445 (5th Cir., 1944); Walling v. Gulf State Paper Corp., 143 F.2d 301 (5th Cir., 1946); Walling v. Panther Creek Mines, 148 F.2d 604 (7th Cir., 1945); National Labor Relations Act: Vincent v. Local No. 106, 207 F.Supp. 414 (D.C. N.D.N.Y., 1962), and Johnston v. J. P. Stevens and Co., D.C., 234 F.Supp. 244 (1964); Labor Management Relations Act of 1947: United Brotherhood of Carpenters v. Sperry, 170 F.2d 863 (10th Cir., 1948); and National Labor Board v. Kelco Corp., 178 F.2d 578 (4th Cir., 1949); Civil Rights Act: United States v. Ramsey, 331 F.2d 824 (5th Cir., 1964).

3. 7 U.S.C. § 499h(d).

on the evidence in this case; there are no compelling factors which would persuade me, as a matter of discretion, to not issue an injunction. But to the contrary, the equities favor injunctive relief.

■ In several cases cited by defendant such as Hecht v. Bowles, supra, the defendants had long since ceased their former violation of the statute; but infractions continue here as certain as night follows day, since defendant still has no license. Thus, the "equity" relied on by defendant is that there is a possibility that the Department of Agriculture's present refusal to issue him a license may be reversed. But Courts cannot create a presumption of error against the administrative process, and defendant's situation is no more unusual than that of any other person when an administrative agency on the base line level and the hearing examiner have *both* made determinations adverse to his claims.

■ Since, admittedly, the decisions of administrative agencies are sometimes reversed, there is always the possibility that a court may later decide that a specific decision of an executive department or an administrative agency was in error. Under such circumstances, the individual applicant may have sustained an acute or irrevocable financial hardship. Under a perfect system of justice the administrative agency would always be right and thus would always be affirmed on appeal, but even though there is not always perfect justice at the administrative level, defendant's preference for judicial inaction until the Court of Appeals has decided the administrative matters need not be adopted; for that preference would lead to total chaos in law enforcement in place of the mere possibility of some hardship inherent in the present statutory scheme.

If my ruling sanctions a tough administrative enforcement policy, Congress made that choice inevitable:

"The Perishable Agricultural Commodities Act is admittedly and intentionally a 'tough' law. It was enacted in 1930 for the purpose of providing a measure of control and regulation over a branch of industry which is engaged almost exclusively in interstate commerce, which is highly competitive, and in which the opportunities for sharp practices, irresponsible business conduct and unfair methods are numerous. The law was designed primarily for the protection of the producers of perishable agricultural products—most of whom must entrust their products to a buyer or commission merchant who may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing —and for the protection of consumers who frequently have no more than the oral representation of the dealer that the product they buy is of the grade and quality they are paying for."[4]

Finally, it must be noted that it could take years before a Court of Appeals or the Supreme Court would make the final determination on an administrative denial of a license; if during this interim injunctions were not issued because of the possibility of error at the administrative level, the injunctive provision would become a nullity in terms of meaningful law enforcement. This conclusion seems particularly manifest in the instant case: when the statute was originally passed, the District Court had only the authority to assess fines for the violation of the statute;[5] and thus there was the inference that Congress had originally thought that fines would be a sufficient deterrent to eliminate the violations of the statute. This Congressional hope was apparently not found within the reality of enforcement, and thus Congress in 1934 added the alternative injunctive remedy and offered a clear guide to its intention:

"The question has frequently been asked, What action could be taken

4. House of Representatives Committee Report No. 1196, 84th Congress, 1st Session, p. 2, July 18, 1955.

5. 7 U.S.C. § 499c.

against a licensee whose license was suspended or revoked and who refused to obey the order of suspension or revocation? The act provides a penalty of $500 and $25 a day to be collected through civil suit for operating without a license. Such proceedings might be accompanied by long delays which could tend to defeat the purpose of the act and, moreover, some licensees might elect to pay the penalty rather than suspend business. It is believed, therefore, there should be specific authority to proceed by injunction in such cases." [6]

■ Defendant further implies that there is an aspect of injustice because defendant is *alone* being prosecuted by requests for an injunction while the former partners of William B. Mandell have as yet not been prosecuted in the District Court. I do not read the Statute as requiring a District Court Judge to become involved in the delicate administrative decision as to whether the Department of Agriculture should initiate injunctive action against *all* violators if the Department desires to proceed against only some of them. To inquire into these matters would take the Courts beyond their expertise and would require them to weigh collateral and sometimes elusive factors which may be decisive for an agency which must make prophylactic decisions to deter future violations. Thus, defendant's argument on this phase is somewhat analogous to a court's being asked to quash a criminal indictment because the United States Attorney and the Federal Bureau of Investigation sought indictments against some, but not against all, persons accused of a specific criminal conspiracy.

At the conclusion of the testimony the parties were advised that I would issue an injunction and that they should submit their proposed findings of fact. Defendant has subsequently filed with the Court a motion to stay an injunction. Since is this case a stay would result in the same unreasonable impediment to the effective administration of the statute, for the reasons already noted, defendant's anticipatory motion to stay the injunction will similarly be denied.

■ In the instant matter, the Government requests a fine of $8,350.00 "because, if for nothing else, the arrogance of the defendant" who continued to operate despite "express notice filed formally that he could not operate," and "he blithely went ahead and did so." (N.T., 90–91.) The defendant requests that no fine be entered. Considering the evidence presented to me, if I were not issuing an injunction a very substantial fine would be imposed. Since, however, an injunction will be granted, I will impose a moderate fine of $525.00 to be paid by defendant within thirty days, and I request that the Government present an appropriate form for judgment as to the imposition of the fine.

In addition to the Findings of Fact and Conclusions of Law attached hereto, to the extent that what I have said constitutes Findings of Fact and Conclusions of Law, this Opinion shall be considered as containing them. All other Requests for Findings of Fact and Conclusions of Law not in harmony with those stated in this Opinion and in the Findings of Fact and Conclusions of Law are severally denied.

## FINDINGS OF FACT

### I.

This is an action brought pursuant to Sections 3 and 8(d) of the Perishable Agricultural Commodities Act of 1930, as amended (7 U.S.C. §§ 499c, 499h (d)) to enforce compliance with the provisions of said Act.

### II.

William B. Mandell Company, hereinafter referred to as the defendant, is a corporation having its principal place

---

6. Report No. 489, Committee on Agriculture, 73rd Congress, 2nd Session, p. 4, February 1, 1934. This reasoning is even more persuasive where, as here, defendant has never been granted a license.

of business at 3301 S. Galloway Street in the City of Philadelphia, Commonwealth of Pennsylvania, and is subject to the jurisdiction of this Court.

### III.

The officers of said corporation are William B. Mandell, President, Treasurer, and owner of 100% of the stock of the corporation.

### IV.

Section 3(a) of the Act (7 U.S.C. § 499c(a)) provides that no person shall at any time carry on the business of a commission merchant, dealer, or broker in fresh or frozen fruits and vegetables without a valid and effective license issued by the Secretary of Agriculture of the United States.

### V.

From March 23, 1964, to date, the defendant has engaged in business operations in interstate commerce as a commission merchant, dealer, or broker in fresh fruits and vegetables without a valid and effective license as required by the Act.

### VI.

From March or April, 1964, the plaintiff, through its representatives in the Department of Agriculture, had reason to believe that the defendant was engaged in operating a business as a commission merchant or broker in fruits and vegetables without a valid license.

### VII.

In April and May, 1964, the Compliance Division of the Department of Agriculture recommended to the general counsel of the Department of Agriculture that proceedings be considered as to an injunction and fine against Mandell, Spector, Rudolph Company and William B. Mandell Company. No such proceedings have been brought against the Mandell, Spector, Rudolph Company; and the instant proceedings against the defendant were instituted on February 12, 1965.

### VIII.

Failure to grant the injunction could cause the public and the government irreparable harm and injury.

### IX.

This matter came for hearing before the Court on plaintiff's motion for a preliminary injunction. The Court heard all arguments and testimony on February 19, 1965, and March 10, 1965, and at the conclusion of the presentation of testimony on March 10, 1965, defendant's counsel requested that the Court enter a final injunction instead of the preliminary injunction originally requested by plaintiff. This request is considered to be a waiver by defendant of the presentation of any further evidence at a final hearing, which waiver was acquiesced in by the Government; accordingly the Findings of Fact and Conclusions of Law are issued for a final rather than a preliminary injunction.

### CONCLUSIONS OF LAW

### I.

The Perishable Agricultural Commodities Act of 1930, as amended, provides that any person operating a business subject to the Act without a valid and effective license thereunder, is subject to the penalties provided in Section 3 (a) of the Act (7 U.S.C. § 499c(a)) up to the amount of $500.00 for the first offense and $25.00 per day for each day thereafter on which the defendant engaged in such business operations in interstate commerce.

### II.

Section 8(d) of the Act (7 U.S.C. § 499h(d)) also provides that if the defendant continues to engage in such business operations without a license, then "the court shall issue an injunction to restrain such defendant from continuing to engage in or to operate such business without such license."

### III.

The defendant herein has admitted to the fact that it is operating a business subject to the Act without a valid and

effective license under the Act and is continuing such operations.

## IV.

Under these circumstances, the issuance of an injunction to restrain defendant from continuing such operations under the Act, is warranted.