815 F.2d 706
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
GILARDI TRUCK & TRANSPORTATION, INC., Defendant-Appellant.
 No. 86-3371.
 United States Court of Appeals, Sixth Circuit.
 March 19, 1987.
 
 Before MERRITT, WELLFORD, and MILBURN, Circuit Judges.
 WELLFORD, Circuit Judge.
 
 
 1
 This action arises under the Perishable Agricultural Commodities Act, 7 U.S.C.A. Secs. 499a-499s (1980) (hereinafter PACA). Pursuant to 7 U.S.C. Sections 499c(a) and 499h(d), on March 7, 1984, the United States of America commenced this action against Gilardi Truck and Transportation, Inc., appellant, to recover civil penalties in the amount of $3,300.00 and permanently to enjoin the appellant from conducting business without a valid license under the Act. Appellant answered and demanded a jury trial. Following an initial pretrial conference, the district court referred the matter to the magistrate.
 
 
 2
 The government filed a motion for summary judgment. The magistrate, on reference, issued his report and recommendation granting appellee's motion for summary judgment and awarding the relief sought in the complaint. Appellant filed a motion to review the magistrate's report and recommendation. The district court adopted the report and recommendation of the magistrate in its entirety, and entered judgment against the appellant in the amount of $3,300.00. In addition, it permanently enjoined appellant from carrying on or engaging in business as a commission merchant, dealer or broker in perishable agricultural commodities in interstate or foreign commerce without holding an effective license under PACA. This appeal ensued.
 
 
 3
 Appellant Gilardi was licensed under PACA to do business as a commission merchant, dealer, or broker of perishable agricultural commodities in interstate or foreign commerce, a mandatory requirement under the Act. (7 U.S.C.A. Section 499c).
 
 
 4
 Robert Ruiz, Inc. filed a complaint with the Department of Agriculture seeking reparation from Gilardi for its failure to pay monies owed for past transactions involving produce shipped in interstate commerce. Gilardi was properly served with the complaint, but filed no answer. Accordingly, on November 30, 1982, a default order was entered in the proceeding against Gilardi ordering it to pay the reparation award plus interest due thereon within thirty days. A similar complaint filed by Mo-Bo Enterprises, Inc. against Gilardi resulted in the entry of a second default order on December 17, 1982. This entry also ordered Gilardi to pay the award within thirty days.
 
 
 5
 Each of these default orders was sent to appellant Gilardi by certified mail, return receipt requested, on the day the order issued. Each was attached to a cover letter which notified Gilardi that unless it advised the Department of Agriculture in 30 days that it had paid the reparation award, or that it had filed an appeal in district court, Gilardi's license would be automatically suspended. Appellant did not appeal these awards.
 
 
 6
 On January 6, 1983, the Department of Agriculture sent a telegram notifying Gilardi that its license would be suspended at the time previously specified (January 7, 1983) and would remain suspended until the reparation award was fully satisfied. The award to Ruiz was satisfied on February 18, 1983; the award to Mo-Bo Enterprises, Inc. was not satisfied until May 5, 1983. Appellee contends that pursuant to 7 U.S.C.A. Section 499g, Gilardi's license was therefore under suspension by operation of law from January 7, 1983 through May 5, 1983. Appellant does not dispute this but contends that it would validly operate after May 5, 1985.[1]
 
 
 7
 Appellant alleges that material questions of fact exist so that this case should not have been resolved in a summary manner. First, he contends that this action is improper since the administrative agency order now under appeal was issued over a year after the default orders were satisfied. Appellee responds, however, that the purpose of this action is not to enforce the reparation orders, but rather to penalize appellant for operating while its license was under suspension. We conclude that whether or not reparation awards have been subsequently satisfied is immaterial to this action.
 
 
 8
 Title VII, U.S.C.A., Section 499g(c) provides for the automatic suspension of a PACA license where a licensee fails to fully and promptly pay a reparation order unless the licensee appeals.[2] See also Abe Rafelson Co. v. Tugwall, 79 F.2d 653, 654-55 (7th Cir.1935) ("a failure to satisfy the reparation order or to perfect an appeal shall automatically bring about a suspension of the license"). PACA should be strictly construed against the government and in favor of the defendant. United States v. Solomon, 3 F.R.D. 411 (E.D.Ill.1944). The evidence clearly shows that Gilardi did not satisfy the reparation orders within the proper time nor did he appeal, therefore his license was effectively and automatically suspended under the Act.
 
 
 9
 The Perishable Agricultural Commodities Act is admittedly and intentionally a "tough" law. It was enacted in 1930 for the purpose of providing a measure of control and regulation over a branch of industry which is engaged almost exclusively in interstate commerce, which is highly competitive, and in which the opportunities for sharp practices, irresponsible business conduct and unfair methods are numerous. The law was designed primarily for the protection of the producers of perishable agricultural products--most of whom must entrust their products to a buyer or commission merchant who may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing--and for the protection of consumers who frequently have no more than the oral representation of the dealer that the product they buy is of the grade and quality they are paying for.
 
 
 10
 United States v. William B. Mandell Co., 242 F.Supp. 873, 875 (E.D.Pa.1965). The purpose of the PACA penalties,[3] is to protect producers and consumers from "sharp practices" and "irresponsible business conduct." Id. at 875. Appellant has failed to pay awards assessed against it in a timely fashion. There is a "clearly recognized need to have financially responsible persons as licensees ... under [the] Act." Marvin Tragash Co. v. United States Dept. of Agriculture, 524 F.2d 1255, 1257 (5th Cir.1975) (quoting Zwick v. Freeman, 373 F.2d 110, 116-17 (2d Cir.), cert. denied, 389 U.S. 835 (1967)). Appellant, moreover, continued to operate while his license was suspended in open violation of the Act, the type of behavior that PACA is designed to penalize.
 
 
 11
 The unfortunate fact that appellant's business is facing bankruptcy does not militate against the imposition of a fine or injunction for violation of the Act. In Melvin Beene Produce Co. v. Agricultural Marketing Service, 728 F.2d 347, 351 (6th Cir.1984), we held that bankruptcy proceedings do not affect the Secretary's ability to revoke a PACA license under 7 U.S.C. Section 499h(a) where the defendant had failed to promptly pay sellers with which it dealt. We stated that Congress had specifically amended Section 525 of the Bankruptcy Act "in order to authorize continuation of the Secretary's license revocation authority under PACA when the violations involve debts dischargeable in bankruptcy." Id. at 351. See also Quinn v. Butz, 510 F.2d 743 (D.C.Cir.1975); Re Fresh Approach, Inc., 49 Bankr. 494 (N.D.Tex.1985) ("The mere filing of a bankruptcy petition does not prevent the Secretary of Agriculture from discharging his or her statutory duties under PACA, one of which is denial of a license to a financially insecure applicant").
 
 
 12
 Appellant also argues that the injunction is a harsh remedy and violates his due process rights. By operating without an effective license, appellant Gilardi's operations were illegal. No due process rights are therefore violated by an injunction under these circumstances. Nothing prohibits appellant from conducting business in commodities other than perishable agricultural commodities, or from operating in a legal fashion. The equities weigh in favor of an injunction prohibiting the appellant from selling perishable agricultural commodities since the Act is designed to prevent financially troubled businesses from dealing in this industry. See United States v. Diapulse Corp., 457 F.2d 25, 29 (2d Cir.1972).
 
 
 13
 While appellant questions the validity of the administrative proceeding, there is no administrative proceeding or order upon which to question validity since civil penalties and injunctions under PACA are matters brought directly to and decided in federal court, and because the suspension of Gilardi's license was automatic. There is no merit to this contention.
 
 
 14
 Appellant also submits that he did not receive adequate notice of the suspension of his license. Attached to appellee's brief is an affidavit with attachments of return receipt cards evidencing notification to Gilardi of the reparation orders. One letter dated November 30, 1982 states that "[u]nless we are advised of payment of the reparation award or that an appeal has been filed in the United States District Court, the order becomes final on December 30, 1982. If the order becomes final and the reparation award is not paid, your license will be automatically suspended effective close of business on January 7, 1983...." Another letter dated December 17, 1982 indicates that the award will become final on January 16, 1983 and if no payment is made by that date or an appeal made, then the license will be automatically suspended on January 21, 1983. These letters, along with the telegram sent January 6, 1983, also a part of the record, constitute adequate notice to appellant.
 
 
 15
 Appellant asserts that the time limit for the government to bring this action has expired. The action was commenced on March 7, 1984; the last reparation award was satisfied on May 5, 1983. There is a five year time limitation set out in 28 U.S.C.A. Section 2462 for commencement of an action for the collection of civil penalties. As to the claim of laches see Melvin Beene Produce Co., 728 F.2d at 349-50 (PACA's nine month limit in Section 499f(a)[4] for the bringing of an action only applies to suits for reparation awards and not to disciplinary actions by the Secretary). In any event, the Secretary brought this action within one year of the violation, and we find this to be a reasonable time.
 
 
 16
 Finally, appellant cites Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425 (6th Cir.1962), as controlling for the proposition that summary judgment is inappropriate in this case. Appellant has failed to show any specific issues of disputed fact which were unresolved in the court below. The business operations in Bohn were legal, and that case was concerned only with whether the defendant was conducting business. We find Bohn to be distinguishable and not controlling; appellant has failed to meet its burden of proof under Celotex Corp. v. Catrett, --- U.S. ----, 106 S.Ct. 2548 (1986), that any genuine issue of material fact exists.
 
 
 17
 Under Federal Rule of Civil Procedure 56(e), the appellant is required to counter appellee's affidavit with some evidence that he did not conduct business during the license revocation period.[5] The Supreme Court in Celotex, 106 S.Ct. at 2553, held that where a nonmovant party bears the burden of proof on an issue at trial, "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Since appellant did not support his denial with affidavits or other evidence that set out some disputed material fact, summary judgment on this issue is appropriate.
 
 
 18
 We accordingly AFFIRM the judgment of the district court.
 
 
 
 [1]
 At oral argument we are advised of a subsequent revocation order. Apparently, the government has not sought to enforce this
 
 
 [2]
 Title 7, U.S.C.A., Section 499g(d) provides:
 Suspension of license for failure to obey reparation order or appeal
 (d) Unless the licensee against whom a reparation order has been issued shows to the satisfaction of the Secretary within five days from the expiration of the period allowed for compliance with such order that he has either taken an appeal as herein authorized or has made payment in full as required by such order his license shall be suspended automatically at the expiration of such five-day period until he shows to the satisfaction of the Secretary that he has paid the amount therein specified with interest thereon to date of payment: Provided, That if on appeal the appellee prevails or if the appeal is dismissed the automatic suspension of license shall become effective at the expiration of thirty days from the date of the judgment on the appeal, but if the judgment is stayed by a court of competent jurisdiction the suspension shall become effective ten days after the expiration of such stay, unless prior thereto the judgment
 of the court has been satisfied.
 
 
 [3]
 Title 7, U.S.C.A., section 499c(a), provides in part:
 (a) After December 10, 1930, no person shall at any time carry on the business of a commission merchant, dealer, or broker without a license valid and effective at such time. Any person who violates any provision of this subsection shall be liable to a penalty of not more than $500 for each such offense and not more than $25 for each day it continues, which shall accrue to the United States and may be recovered in a civil suit brought by the United States.
 Title 7, U.S.C.A., section 499h(d) provides:
 (d) In addition to being subject to the penalties provided by section 499c(a) of this title, any commission merchant, dealer, or broker who engages in or operates such business without a valid and effective license from the Secretary shall be liable to be proceeded against in any court of competent jurisdiction in a suit by the United States for an injunction to restrain such defendant from further continuing
 so to engage in or operate such business, and, if the court shall find that the defendant is continuing to engage in such business without a valid and effective license, the court shall issue an injunction to restrain such defendant from continuing to engage in or to operate such business without such license.
 
 
 [4]
 Section 499f(a) provides in part:
 (a) Any person complaining of any violation of any provision of section 499b of this title by any commission merchant, dealer, or broker may, at any time within nine months after the cause of action accrues, apply to the Secretary by petition....
 
 
 [5]
 Fed.R.Civ.P. 56(e) states in part:
 When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
 As stated in the annotation to the rule, "[t]he very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."