### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### LOCAL 294, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent.

### No. 124, Docket 27069.

United States Court of Appeals
Second Circuit.

Argued Dec. 6, 1961.

Decided Dec. 26, 1961.

Samuel M. Singer, Atty., National Labor Relations Board, Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Elliott Moore, Atty., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

· Harry Pozefsky, Gloversville, N. Y., for respondent.

Before MEDINA, SMITH and MARSHALL, Circuit Judges.

MEDINA, Circuit Judge.

The National Labor Relations Board petitions for enforcement of an order directing Local 294 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America to cease and desist from the continuance of unfair labor practices in violation of Sections 8(b) (4) (i) (B) and 8(e) of the National Labor Relations Act, as amended by the Labor-Management Reporting and Disclosure Act of 1959 (61 Stat. 136, 73 Stat. 519, 29 U.S.C.A. § 151 et seq.).

The controversy arose when the union got in a dispute with Van Transport Lines, Inc., the operator of a fleet of motor trucks engaged in interstate commerce, with its headquarters in Albany, N. Y., over the refusal of Van to reinstate a truckdriver pursuant to an arbitration award. The remaining truckdrivers were authorized by the union to go on strike and they did so. One phase of the case has to do with the activities of members of the union that were held by the Board to constitute inducements and encouragements to individuals employed by customers of Van in the nature of a secondary boycott, in violation of Section 8(b) (4) (i) (B) of the Act. The other phase of the case relates to a hot cargo clause in a contract entered into by the union with Staats Express and other members of the trucking employers' bargaining association, held by the Board to be in violation of Section 8(e). We think the order should be in all respects enforced. The case is reported at 131 N.L.R.B. No. 42.

Pursuant to instructions from Edward Smith, the business agent of the union, the striking truckmen went around to the various firms doing business with Van, told them about the strike against Van and asked them "to cooperate." We are not asked to review the Board's rulings to the effect that requests for "cooperation" amounting to inducements and encouragements, addressed to the personnel of management, such as corporate officers, partners and others in the category of upper level supervisors, do not come within the purview of Section 8(b) (4) (i) (B), but we think this phase of the case, in point of legal theory, is necessarily involved in the decision of the general question of statutory construction that lies at the heart of the case, and it will be covered by the ensuing discussion.

Solicitations for cooperation were also addressed to a considerable number of rank-and-file employees of Van's customers, some of whom handled freight deliveries and were stewards of the union, and also to certain minor supervisors in charge of the shipping and routing operations of their respective employers. One of these, for example, was Shan Lewis, shipping foreman and the union's job steward at R. T. A. Distributors.

In the context of this case the contention of the union that a mere request for "cooperation" was not an inducement or encouragement to cease doing business with any other person in violation of Section 8(b) (4) (i) (B) is completely lacking in merit. In the atmosphere of the strike and the knowledge of the strike conveyed to Van's customers by the strik-

ers the meaning of the request for "co-operation" was all too apparent; and it was effective. The customers did stop doing business with Van. In many instances the request was in terms "not to ship by Van," not to "use Van for the purpose of future routing." Moreover, in certain instances the strikers told receiving clerks, who could not possibly be placed in the category of supervisors, "not to accept the freight of a Van truck which was then at their employer's dock with an unloaded cargo." This type of conduct comes squarely within the proscribed secondary boycott, as defined in the Act.

■ It is the contention of the union, however, that, despite the 1959 amendments to the Act, no inducements or encouragements addressed to employees who fall within the definition of supervisors, as defined in Section 2(11) of the Act,[1] can be held to constitute an unfair labor practice, in violation of Section 8 (b) (4) (i) (B) of the Act. We think an analysis of the legislative history of the 1959 amendments, as described at length in the opinion of the Board in Local No. 505, International Brotherhood of Teamsters, etc. [Carolina Lumber Co.], 1961, 130 N.L.R.B. No. 148, and in the intermediate report of the hearing examiner, adopted by the Board in the case now before us, demonstrates the unsoundness of this contention. The pith of the point is that the words "employees of any employer" appearing in the earlier Act were deleted in 1959, and in substitution therefor the expression "any individual employed by any person" was inserted, in order to eliminate an "illogical loophole" in the statute. N.L.R.B., Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, Vol. II, pp. 1706–7. Accordingly, the reasoning of such cases as Ohio Power Co. v. N. L. R.

B., 6 Cir., 1949, 176 F.2d 385, 11 A.L.R. 2d 243, and Rabouin v. N. L. R. B., 2 Cir., 1952, 195 F.2d 906, strongly relied upon by the union, has been superseded and is no longer applicable. In other words, while a supervisor, as defined in Section 2(11) read together with Section 2(3) of the Act, was not an "employee" as described in Section 8(b) (4) (i) (B) before the 1959 amendments, a supervisor may now be "any individual employed by any person engaged in commerce or in an industry affecting commerce," as the Act now reads. As Section 2(3), which defines the term "employee" is so phrased as not to be applicable to anyone "employed as a supervisor," the deletion of the word "employees," and the substitution of the phrase "any individual employed by," effected the change in the law that the Congress deemed desirable.

■ So much for step one. We then come face to face with the real problem of statutory construction in this case: is the phrase "any individual employed by" to be construed literally, or in such fashion as to plug the "illogical loophole" and at the same time carry out the basic intent of the Congress in making the change? This question almost answers itself. It would go far beyond the purpose of the amendatory legislation, as disclosed in the legislative history, if we were to hold that "any individual employed by" included corporate officers, high-ranking supervisors and others "high up the management ladder." The Board wisely held inducements and encouragements in the nature of a secondary boycott addressed to those in management far above the rank-and-file workers not to constitute violations of Section 8(b) (4) (i) (B). Moreover, the present statutory scheme clearly intends employers to be the principal ones en-

---

1. Section 2(11), 29 U.S.C.A. § 152(11):
"The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

compassed by Section 8(b) (4) (ii) relative to threats, coercion or restraints addressed to "any person engaged in commerce or in an industry affecting commerce." In other words, inducements and encouragements addressed to management will not suffice to establish an unfair labor practice in the area of secondary boycotts; threats, coercion or restraints are necessary.

Moreover, we hold inducements and encouragements addressed to rank-and-file workers and minor supervisors, such as those in charge of shipping and routing operations, and the shipping foreman Shan Lewis, above referred to, do constitute violations of Section 8(b) (4) (i) (B), and we sustain the Board's ruling to that effect. See Alpert v. Excavating & Bldg. Material Chauffeurs & Helpers Local Union No. 379, etc., D.C.Mass.1960, 184 F.Supp. 558. We agree with the statement by the Board relative to such minor supervisors in the Carolina Lumber Company case, that "although they are management's representatives at a low level, [they] are through their work, associations, and interests, still closely aligned with those whom they direct and oversee."

■ The Board's order relative to the contract containing the hot cargo clause, entered into by the union with Staats Express is criticized as too broad. We think this criticism is devoid of merit, as it is not disputed that the contract, in a printed booklet, was executed by the union not only with Staats Express, but with other members of the trucking employers' bargaining association. The union's conduct in the past[2] also indicates that, unless enjoined, the commission by the union of similar unlawful acts may fairly be anticipated. See N. L. R. B. v. Express Publishing Co., 1941, 312 U.S. 426, 435, 61 S.Ct. 693, 85 L.Ed. 930. We think Communications Workers of America, AFL–CIO v. N. L. R. B., 1960, 362

U.S. 479, 80 S.Ct. 838, 4 L.Ed.2d 896, is distinguishable. The order properly directed the union to cease and desist from entering into any contract containing a hot cargo clause with Staats Express or with any other employer, and from "maintaining in effect, implementing, or renewing" the hot cargo clause in the contract already entered into with Staats Express. The effect of this on the existing contract with Staats Express was simply to remove the offending clause, and this was clearly proper.

Enforcement granted.

2. See N. L. R. B. v. Local 294, International Brotherhood of Teamsters, etc., 2 Cir., 1960, 284 F.2d 887; N. L. R. B. v. Local 294, International Brotherhood of Teamsters, etc., 2 Cir., 1960, 273 F.2d 696; N. L. R. B. v. Local 294, International Brotherhood of Teamsters, etc., 2 Cir., 1960, 284 F.2d 893; N. L. R. B. v. Local 294, International Brotherhood of Teamsters, etc., 2 Cir., 1960, 279 F.2d 83.