**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DISTRICT COUNCIL OF PAINTERS #48 and Paint Makers Local Union #1232, Respondents.**

No. 19263.

United States Court of Appeals Ninth Circuit.

Jan. 5, 1965.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin J. Welles, Robert A. Armstrong, Attys., N.L.R.B., Washington, D. C., for petitioner.

Herbert M. Ansell, Richman, Garrett & Ansell, Los Angeles, Cal., for respondents.

Alexander H. Schullman, Los Angeles, Cal., for respondent Union, Paint Makers Local #1232.

Before BARNES, DUNIWAY and ELY, Circuit Judges.

BARNES, Circuit Judge.

This is a petition by the National Labor Relations Board for enforcement of its order, pursuant to Section 10(e) of the National Labor Relations Act, as amended (29 U.S.C. § 151 et seq.). The Board possessed jurisdiction over respondents' activities because of the substantial interstate commerce that was affected. 29 U.S.C. §§ 152(6, 7), 160(a).

In the proceeding below, the National Labor Relations Board found that Local 1232 violated Section 8(b) (4) (i) and (ii) (B) of the Act by encouraging an individual employed by Avalon Painting & Drywall Co. ("Avalon") to refuse in the course of his employment to use, handle, or otherwise perform services with materials manufactured by Hamilton Materials, Inc. ("Hamilton"), and by threatening, coercing and restraining Avalon, all with an object of forcing or requiring Avalon to cease doing business with Hamilton. The Board also found that the District Council of Painters #48 violated Section 8(b) (4) (i) (B) of the Act by encouraging individuals employed by Avalon and Reuben Casey ("Casey") to refuse in the course of their employment to use, handle, or otherwise perform services with Hamilton material, with an object of forcing or requiring Avalon and Casey to cease doing business with Hamilton. The Board's order requires that both respondents cease and desist from the unfair labor practices found, post the customary

notices at their business offices and union halls and mail signed copies to the Board for posting at Avalon and Casey, if the employers "so agree."

Since December 19, 1962, Local 1232 had had a labor dispute with Hamilton, the primary employer. During the same time period, Local 1232 has not been engaged in a labor dispute with Avalon or Casey, the secondary employers. The Board found that in the course of its labor dispute with Hamilton, Local 1232 engaged in a proscribed secondary boycott of Avalon. The Board also found that, in assisting Local 1232 in its dispute, unaffiliated District 48 engaged in a secondary boycott of Avalon and Casey.

The alleged violations with respect to Avalon occurred at a construction site known as Springdale South Homes, where Avalon employees were working under the supervision of "drywall foreman" Kenneth L. Coslett. On December 20, 1962, a business agent of Local 1232, one Johnie Thomas, approached Coslett while Hamilton materials were being unloaded at the construction site. Thomas introduced himself to Coslett as a representative of Local 1232, and told Coslett that Avalon "wouldn't be able to unload the material * * *, that it was unfair material, and [that] if we [Avalon] did unload the material * * * and used it * * * they [Local 1232] would put up a picket line and we [Avalon] wouldn't be able to enter the job." The materials were nevertheless unloaded and used in the project and no picketing took place.

District Council 48, in support of Local 1232, sent two business representatives to the Springdale project about two days after Thomas' visit. Addressing Coslett and Avalon's project superintendent, Forrest Windell, one of the representatives, Calmer Hanson, said that the "material arriving on the job was unfair." Windell inquired whether the District Council was going to picket the project, and Hanson replied that he did not know. With that, the two representatives left the construction site.

On another occasion, on or about December 20, 1962, Hanson approached a "taping foreman," R. C. Wooten, at a construction site known as Weatherstone North, where employees of Casey were engaged in a project. Hanson told Wooten that the materials were "unfair" but, in resolving a dispute in the testimony, the Hearing Examiner determined that no threats of picketing were uttered by the union representatives.

Another incident occurred in January 1963 at a construction project known as Sunkist Ranchos, where Avalon personnel were then working. During the discussion of the unloading of Hamilton materials, Johnie Thomas came up to an Avalon foreman named Giambra and gave him two circulars, indicating that the picketing was solely of a primary nature against Hamilton employees, and told Giambra he would picket if the truck were unloaded. The driver proceeded to unload the truck, and while he was so engaged, Thomas stationed himself at a location on a street about a block from the unloading site and engaged in picketing. Upon completion of the unloading, the truck driver drove off, and Thomas then discontinued the picketing and followed the truck in his car.

The Hearing Examiner determined that the only proscribed activities were the Section 8(b) (4) (i) and (ii) (B) violations committed by Johnie Thomas on behalf of Local 1232 at the Springdale site. The Board affirmed the findings of Local 1232 violations, but also found that District 48 had violated Section 8(b) (4) (i) (B) by its statements by Calmer Hanson at the Springdale and Weatherstone sites that the Hamilton materials were "unfair." Neither the Hearing Examiner nor the Board found the actions at Sunkist Ranchos in violation of the Act; each found that the activities there were purely primary in character and that Thomas so informed the foreman.

The Board's petition seeks to enforce its order regarding the alleged violations of Section 8(b) (4) committed at the

Springdale and Weatherstone sites. Respondents challenge the petition principally on three distinct grounds:

(1) There is no substantial evidence on the record to support the findings of the Board of Section 8(b) (4) violations.

(2) The activities at the construction sites were registered against the primary employer and could not, therefore, be considered secondary boycotts.

(3) The alleged statements made by the union representatives were in any event not violative of Section 8(b) (4) because they were made to foremen in supervisory capacities, not employees.

## I

The factual findings of the Board are amply supported by substantial evidence on the record. Corroborative of this conclusion is the fact that the Hearing Examiner and Board agreed completely on the factual findings; the Board's modification of the Hearing Examiner's decision was based only on the legal significance to be attached to a statement that Hamilton's materials were "unfair." The evidence in the record supports the factual findings agreed upon by the Hearing Examiner and the Board. Respondents' contention of a lack of substantial evidence is not well taken.

## II

The remaining legal errors asserted by respondents refer to the proper construction of Section 8(b) (4). That Section, as amended by the Labor-Management Reporting and Disclosure Act of 1959, provides in part that it shall be an unfair labor practice for a labor organization or its agents:

"(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or

"(ii) to threaten, coerce, or restrain any person engaged in commerce or in any industry affecting commerce, where in either case an objective thereof is:

"(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of Section 9; Provided, That nothing contained in this clause (B) shall be .construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing; * * * Provided further, That for the purposes of this paragraph (4) only, nothing contained in such paragraph shall be construed to prohibit publicity, other than picketing, for the purpose of truthfully advising the public, including consumers and members of a labor organization, that a product or products are produced by an employer with whom the labor organization has a primary dispute and are distributed by another. employer, as long as such publicity does not have an effect of inducing any individual employed by any person other than the primary employer in the course of his employment to refuse to pick up, deliver, or transport any goods, or not to perform any services, at the establishment of the employer engaged in such distribution."

This statutory provision is clearly aimed at curbing the practice commonly known as the secondary boycott whose "sanctions bear, not upon the employer who alone is a party to the

dispute, but upon some third party who has no concern in it." International Bhd. of Elec. Workers, etc. v. N. L. R. B., 181 F.2d 34, 37 (2d Cir.1950), affirmed 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299 (1951). The activities found to have taken place by the Hearing Examiner and Board are clearly not of a type directed solely against the primary employer. The clearest demonstration of the secondary nature of the proscribed activities is to compare them to the union's activities at the Sunkist Ranchos project. At Sunkist it was made clear that the threats were made *to picket activities of Hamilton at the site* rather than those *of any secondary employer*. The circulars given to Giambra by Thomas clearly informed the foreman that the picketing activities were aimed against Hamilton employees and would only be carried on while such employees were at the site. The driver of the Hamilton truck was undeniably the object of Thomas' picketing, not the secondary employer. The contrast between what transpired at Sunkist Ranchos and what transpired at Springdale and Weatherstone is striking. At the latter two sites, union representatives sought to induce and encourage the foreman in charge of work in progress to stop construction activities as proscribed by Section 8(b) (4) (i) (B) of the Act. And at Springdale, Thomas even threatened the Avalon foreman, Kenneth Coslett, that if the material was unloaded, Local 1232 "would put up a picket line" and Avalon's men "wouldn't be able to enter the job." Such threats to third parties are clearly proscribed by Section 8(b) (4) (ii) (B). Respondents cannot sustain a contention that such inducements and threats are essentially a *primary* boycott. Their conduct as well as their words clearly betray them.

Having accepted as true that Thomas told Coslett that if Avalon handled Hamilton materials, pickets would be set up and Avalon employees might be kept off the job, it became almost surplusage to state that such conduct constituted a threat against Avalon within the meaning of Section 8(b) (4) (ii) (B). We hold that such declarations by a union representative are clearly within the terms of the statutory prohibition. It also is clear that Thomas' conduct at Springdale constituted the inducement and encouragement of the proscribed acts of Section 8(b) (4) (i) (B).

■ The Hearing Examiner and Board did disagree as to whether the District 48 representative's statements at Springdale and Weatherstone that Hamilton's material was "unfair" constituted an inducement or encouragement under Section 8(b) (4) (i) (B). We agree with the Board that such statements did constitute an inducement or encouragement. The statement made was clear in its meaning and implications. It falls within the construction of this statutory provision set out by the Supreme Court in International Bhd. of Elec. Workers, etc. v. N. L. R. B., 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299 (1951). In that case, the Court said:

"The words 'induce or encourage' are broad enough to include in them every form of influence and persuasion." Id. at 701–702, 71 S.Ct. at 958.

## III

■ Respondents also contend that, given the findings of the Board, no violation of Section 8(b) (4) can be found because the individuals approached by the union representatives were not employees of a secondary employer, but rather supervisors whom the union could legitimately approach. This argument flies in the face of both the statute's language and intent. This is clearly pointed out by Judge Medina in N. L. R. B. v. Local 294, International Bhd. of Teamsters, 298 F.2d 105 (2d Cir. 1961), where he held that even if foremen are to be considered supervisors, Section 8(b) (4) (i) (B) applies to supervisors. The words "employees of any employer" were deleted from the Act in 1959 and were replaced by "any individual employed by any person." A supervisor, as defined in Section 2(11)

read together with Section 2(3) of the Act, was not an "employee" within Section 8(b) (4) before the 1959 amendments. Pursuant to the 1959 amendments, however, a supervisor may now be "any individual employed by any person engaged in commerce or in an industry affecting commerce," as the Act now reads. But at the same time this expansion of the statutory language was effected, Section 8(b) (4) was reconstructed into two distinct subdivisions. This new bipartite construction of Section 8(b) (4) is interrelated to the statutory change which clearly indicated the provision's applicability to those in a supervisory capacity. This interrelationship was discussed by the Supreme Court in the recent case of N. L. R. B. v. Servette, Inc., 377 U.S. 46, 84 S.Ct. 1098, 12 L.Ed.2d 121 (1964). There, Mr. Justice Brennan carefully noted that Section 8(b) (4) (i) (B) now applies to managers as well as employees of secondary employers, and proscribes any inducements or encouragements of these individuals "to withhold their services from their employer." Id. at 54, 84 S.Ct. at 1104. Subsection (ii), on the other hand, treats the manager and supervisor in his discretionary capacity. This subsection condemns any attempt to induce the exercise of discretion if the inducement would "threaten, coerce, or restrain" that exercise. Ibid. Thus, if the statements of the District Council #48 representatives that Hamilton products were "unfair" were directed at the foreman's discretionary authority alone, such statements would not be violative of Section 8(b) (4); they are not threats within the meaning of subsection (ii). But if the statements were made with the intent to induce the foremen to withhold their services from their employer, a violation of subsection (i) would be evident; foremen are now clearly encompassed within subsection (i) by virtue

of the 1959 amendments. The National Labor Relations Board determined that the statements that Hamilton materials were "unfair" were uttered with the express intent of inducing the foremen to withhold their services from their employers.[1] The statements were thus inducements in violation of Section 8(b) (4) (i) (B). We hold this finding is supported by substantial evidence.

Finding no error, we order the Board's petition to enforce its order of November 13, 1963, be granted.

---

1. Representatives of District Council #48 approached both Coslett, who was a foreman and a union member, and Windell, who was project superintendent. The Board's determination relates to Coslett, and as we have indicated, is supported by the evidence. The Board did not consider the statement to Windell in this connection, and we therefore express no opinion about it.