**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 282, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent.**

**No. 315, Docket 29149.**

United States Court of Appeals
Second Circuit.

Argued Jan. 26, 1965.

Decided April 22, 1965.

---

3. S. 3170, 69th Cong., 1st Sess. § 3 (1927), as originally drafted. See 370 U.S. at 122–124, 82 S.Ct. at 1201–1202.

Hans J. Lehmann, Attorney, National Labor Relations Board (Arnold Ordman, General Counsel, Dominick L. Manoli, Assoc. General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Stephen B. Goldberg, Washington, D. C., Attorney), for petitioner.

Cohen & Weiss, New York City (Bruce H. Simon, New York City, of counsel), for respondent.

Before WATERMAN, SMITH and ANDERSON, Circuit Judges.

WATERMAN, Circuit Judge:

The National Labor Relations Board found that Local 282, International Brotherhood of Teamsters, had violated Section 8(b) (4) (i) (ii) (B) of the National Labor Relations Act, 29 U.S.C. § 158(b) (4) (i) (ii) (B).[1] The union was ordered to cease and desist from further violations of that provision and to post appropriate notices. The findings and order of the Board are reported in 146 N.L. R.B. 956. The Board now, pursuant to Section 10(e) of the Act, 29 U.S.C. § 160(e), petitions for enforcement of its order.

The relevant facts are undisputed. The City of New York selected Joseph C. Blitz, Inc. (Blitz) as the general contractor for the construction of a sanitation plant. Blitz used a wholly-owned subsidiary, Concrete Construction Corp. (Concrete Construction) to perform the concrete work. Concrete Construction contracted with Colonial Sand and Stone Co. (Colonial) to provide needed building materials including gravel and cement; Colonial's truck drivers are represented by Local 282. Colonial subcontracted with Universal Atlas Cement Division of United States Steel Corp. (Universal Atlas) to supply the cement. Universal Atlas hired United States Trucking Corp. (U. S. Trucking) to transport the cement to the building site; drivers for U. S. Trucking are represented by Local 801, International Brotherhood of Teamsters.

On October 8, 1962, a business agent of Local 282 told the U. S. Trucking comptroller that the hauling of cement to the building site belonged to Local 282 rather than to Local 801, and that U. S. Trucking would have to put its five

---

1. "(b) It shall be an unfair labor practice for a labor organization or its agents—

　　*　　*　　*　　*　　*

"(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

　　*　　*　　*　　*　　*

"(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing."

cement truckers under a labor contract with Local 282 if the firm wished to continue that hauling.

On the morning of October 9, three Local 282 business agents informed officials of Blitz and Concrete Construction that they claimed the cement hauling work, and that they would pull their members off Colonial's gravel trucks if Blitz or Concrete Construction accepted delivery of cement from U. S. Trucking. Consequently, Concrete Construction's job superintendent told a cement trucker for U. S. Trucking that he could not accept his load of cement.

Meanwhile, one of the Local 282 agents instructed a gravel trucker for Colonial not to unload until he was given permission by the union. As a result, an official of Colonial appeared at the building site and also told the Concrete Construction job superintendent not to accept cement from U. S. Trucking. The job superintendent again informed the cement trucker for U. S. Trucking that he could not accept his load of cement, and he later repeated this statement to the U. S. Trucking comptroller.

In the afternoon of October 9, the secretary-treasurer of Local 282 told the U. S. Trucking president that cement truckers for U. S. Trucking would continue to be barred from the building site unless they were put under a labor contract with Local 282. U. S. Trucking did not attempt to make any further deliveries of cement, and none were requested.

On the basis of these facts, the Board found under Section 8(b) (4) (i) (ii) that Local 282 had "induced" a truck driver of a neutral employer (Colonial) to cease work and had "threatened" neutral employers (Blitz, Concrete Construction, Colonial, and Universal Atlas) with work stoppages. We agree with the Board's interpretation of the law. NLRB v. Plumbers Union, 299 F.2d 497, 500 (2 Cir. 1962); NLRB v. Local 294, Int'l Bhd. of Teamsters, 298 F.2d 105 (2 Cir. 1961). Local 282 does not argue otherwise.

The Board also found, under Section 8(b) (4) (B), that the purpose of these actions was to force the neutral employers to cease doing business with U. S. Trucking and to require U. S. Trucking to recognize Local 282 as bargaining representative of the cement truckers. Local 282 had argued before the Board that its aim was to represent all cement truckers in the New York City area so as to protect the labor standards of its present members. The Board held that this purpose might have created a primary dispute between Local 282 and U. S. Trucking but did not justify the exertion of economic pressure against neutral employers. This ruling stated the law correctly. NLRB v. Milk Drivers, etc., Union, 341 F.2d 29, 32 (2 Cir. 1965). Local 282 had also argued before the Board that its aim was to enforce a subcontracting clause in the labor contract with Colonial which provided: "Additional equipment may be hired only if all the Employer's own equipment of the same type which is available for use is being operated by employees of the Employer." The Board found, to the contrary, that what Local 282 wanted was recognition by U. S. Trucking rather than enforcement of the subcontracting clause. This finding was most certainly supported by substantial evidence. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Local 282 does not dispute these points on appeal.

The Board issued a complaint against Local 282 under Section 8(b) (4) (D), the jurisdictional disputes provision, as well as under 8(b) (4) (B). After obtaining a temporary injunction against further violations, the Board held separate hearings on the two charges. While the cases were awaiting decision, U. S. Trucking informed the Board that the jurisdictional dispute between Local 282 and Local 801 had been settled, and the firm requested that both charges be dropped. The Board agreed to this request as far as 8(b) (4) (D), the jurisdictional disputes provision, was concerned, but it refused to halt the proceedings under 8(b) (4) (B).

Local 282's principal argument on appeal is that the Board should have

dismissed its complaint under Section 8(b) (4) (B) without passing on the merits of the case. The union points out that Section 10(k) of the Act, 29 U.S.C. § 160(k), was designed by Congress to encourage the private resolution of jurisdictional disputes for the sake of industrial peace. NLRB v. Radio & Television Broadcast Eng'rs Union, 364 U.S. 573, 576–577, 81 S.Ct. 330, 5 L.Ed.2d 302 (1961). The union claims that this purpose may be thwarted if the Board insists on pressing 8(b) (4) (B) charges after the underlying jurisdictional dispute had been amicably settled.

Local 282 overlooks the fact that there is another congressional policy to be served by this proceeding, the policy embodied in Section 8(b) (4) (B) of deterring union pressure against neutral employers. Nothing in the Act forbids the Board from giving this policy precedence when it comes into an arguable conflict with the purpose of Section 10(k). Cf. Local No. 5, United Ass'n of Journeymen, etc. v. NLRB, 116 U.S.App.D.C. 100, 321 F.2d 366, 371, cert. denied, 375 U.S. 921, 84 S.Ct. 266, 11 L.Ed.2d 165 (1963).

■ The same clash of interests occurs when the Board presses unfair labor practice charges for conduct which has already been the subject of an arbitration award. Sections 201(a) and 203(d) of the Labor Management Relations Act, 29 U.S.C. §§ 171(a), 173(d), declare that industrial peace is best attained by collective bargaining and private arbitration. See United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). This policy does not prevent the Board from granting its own form of relief, even at the risk of discouraging resort to private machinery for settling labor disputes. Lodge 743, Int'l Ass'n of Machinists v. United Aircraft Corp., 337 F.2d 5 (2 Cir. 1964), cert. denied, 380 U.S. 908, 85 S.Ct. 893, 13 L.Ed.2d 797 (1965).

■ It is true that in a recent case, the Board dismissed a Section 8(b) (4) (B) complaint after disposing of the underlying jurisdictional dispute. New York Paper Cutters' & Bookbinders' Local Union, 148 N.L.R.B. No. 132 (1964). But the Board has discretion to treat various jurisdictional settlements differently, just as it has discretion either to respect or disregard arbitration awards. See Carey v. Westinghouse Elec. Corp., 375 U.S. 261, 270–272, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). We cannot say that the Board abused its discretion in the present case.

■ The Board directed Local 282, in effect, to cease and desist from ever again violating Section 8(b) (4) (B) in any way.[2] The Board defends the unusual breadth of the order on the ground that Local 282 is an incorrigible secondary boycotter. See Local 282, Int'l Bhd. of Teamsters, 137 N.L.R.B. 858 (1962),

---

2. The relevant portions of the order are as follows:

"1. Cease and desist from:

"(a) Engaging in, or inducing or encouraging any individual employed by * * * any * * * employer, to engage in a strike or a refusal in the course of his employment to use, manufacture, process, transport or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is either (1) to force or require * * * any * * * employer or person, to cease doing business with * * * any other employer or person, or (2) to force or require * * * any other employer to recognize or bargain with Respondent as the representative of any of its employees unless Respondent has been certified as the representative of such employees under the provisions of Section 9 of the Act.

"(b) Threatening, coercing, and restraining * * * any * * * person, where an object thereof is either (1) to force or require * * * any * * * employer or person, to cease doing business with * * * any other employer or person, or (2) to force or require * * * any other employer, to recognize or bargain with Respondent as the representative of any of its employees unless Respondent has been certified as the representative of such employees under the provisions of Section 9 of the Act."

enforced by consent decree, No. 27765, 2 Cir., Jan. 18, 1963; Local 282, Int'l Bhd. of Teamsters, 139 N.L.R.B. 1077 (1962), enforced by default judgment, No. 28608, 2 Cir., April 21, 1964; Local 282, Int'l Bhd. of Teamsters, 141 N.L.R.B. 424 (1963), enforced by consent decree, No. 29031, 2 Cir., Jan. 12, 1965. We are of the opinion that an order of this scope was justifiable in view of the union's likely future violations of 8(b) (4) (B). See NLRB v. Milk Drivers, etc., Union, supra, 341 F.2d at 33; NLRB v. Local 294, Int'l Bhd. of Teamsters, supra, 298 F.2d at 108.

Order enforced.