CONSTRUCTION & GENERAL LABOR-
ERS LOCAL UNION NO. 438,
AFL–CIO, Appellant,

v.

HARDY ENGINEERING AND CON-
STRUCTION COMPANY, Inc.,
Appellee.

No. 21636.

United States Court of Appeals
Fifth Circuit.

Dec. 21, 1965.

John S. Patton, Tom Carter, Atlanta, Ga., for appellant.

John Bacheller, Jr., Fisher & Phillips, Atlanta, Ga., for appellee.

Before TUTTLE, Chief Judge, and EDGERTON * and SMITH,** Circuit Judges.

WILLIAM F. SMITH, Circuit Judge:

This action, under § 303 of the Labor Management Relations Act, 29 U.S.C. § 187, is for damages allegedly sustained by the plaintiff as a consequence of a secondary boycott initiated and maintained by the defendant in violation of § 8(b) (4) (i) (ii) (B) of the National Labor Relations Act, 29 U.S.C. § 158(b) (4) (i) (ii) (B). The trial of the action by the court without a jury resulted in a judgment in favor of the plaintiff from which this appeal was taken. The defendant challenges the validity of the judgment principally on the ground that the evidence did not support the court's findings of fact and the conclusions derived therefrom.

The only question for our decision is whether there exists in the record an adequate evidentiary basis for the trial court's findings of fact, which may not be set aside unless clearly erroneous or induced by an erroneous view of the law. Fed.Rules Civ.Proc., rule 52(a) 28 U.S.C.A.; Levy v. Manget, 308 F.2d 248 (5th Cir. 1962); Local Union 984, Int. Bro. of Teamsters, etc. v. Humko Co., 287 F.2d 231 (6th Cir. 1961), cert. den. 336 U.S. 962, 81 S.Ct. 1922, 6 L.Ed.2d 1254 (1961). Similarly unassailable are factual conclusions derived from findings of fact amply supported by the evidence. James v. United States, 252 F.2d 687 (5th Cir. 1958); Shepherd v. Mahannah, 220 F.2d 737 (5th Cir. 1955); Knapp v. Banta, 333 F.2d 746 (7th Cir. 1964); Homestake Mining Co. v. Midcontinent Exploration Co., 282 F.2d 787 (10th Cir. 1960). That the court below could have reached different conclusions on the same evidence is immaterial on appeal. Ibid.

The plaintiff was under a general contract with the City of Atlanta to construct an elementary school on a large ir-

---

* Senior Circuit Judge of the D.C. Circuit, sitting by designation.

** Of the Third Circuit, sitting by designation.

regularly shaped tract of land bounded on the north by Fair Street, on the east by a proposed street, on the south by Westview Drive, and on the west by Lawton Street; the proposed street extended along a curve into Westview Drive. The construction site was not enclosed. The McKinney Drilling Company, a secondary employer, was under a subcontract with the plaintiff to sink caissons preparatory to laying the foundation.

Work commenced early in October of 1961, and apparently progressed satisfactorily until November 7 of the same year. During this period the plaintiff's only employees on the site were common laborers who were not represented by any union and whose hourly wage rate was substantially lower than the defendant's scale. These employees entered and left the premises each day by way of an unfinished roadway which opened on Westview Drive; they reported at an office located in the vicinity of the southerly end of the site. The employees of the secondary employer were union members, several of whom were represented by the defendant. They entered and left the premises by way of a temporary driveway located on Fair Street.

■ There was some conflict in the testimony as to the proximity of the areas in which the employees of the respective employers were engaged in the performance of their work. The court below resolved this conflict in favor of the plaintiff, and we think properly. There was testimony, which the court below apparently found credible, that the primary employees were working in an area far removed from the Fair Street entrance and the location at which the secondary employees were working.

Aware of the disparity between the wage rate paid common laborers on the project and the union scale, the defendant's business agent endeavored to persuade the plaintiff's president to adopt its scale. When their discussions proved unsuccessful the defendant stationed pickets near the Fair Street entrance, used by the secondary employees, some distance from the Westview Drive entrance used by the primary employees. The picketing commenced on November 7, 1961, and continued during the usual working hours on the 8th, 9th, 10th and 13th, but was discontinued on the 11th and 12th, a weekend. There were no pickets stationed in the vicinity of the Westview Drive entrance at any time during the period here in question.

When the pickets appeared at the construction site the secondary employees walked off the job and remained away while the picket line was maintained. The pickets were withdrawn on the 14th and 15th, and on the 16th the secondary employees returned to work. Soon after their return picketing was resumed and again they walked off the job. Although the picket line was removed after this last walkout the secondary employees remained away from the project for approximately nineteen days. They returned to work only after the plaintiff threatened their employer with cancellation of its subcontract. Some time during the work stoppage the plaintiff lodged an unfair labor practice charge with the Board; this charge was withdrawn when work on the project was resumed.

The evidence as a whole points unmistakably to several significant factors: the primary employees were not on strike; the secondary employees were not involved in a labor dispute with their employer; the picket line was withdrawn within a few days after the secondary employees walked off the job site and was restored only after they returned to work; the picketing was confined to a location from which it could have had a meaningful appeal only to the secondary employees; and, the defendant made no effort to maintain a picket line at the Westview Drive entrance, a more advantageous location if the appeal was directed solely to the primary employees.

■ The defendant contended below, as it does here, that the picketing was organizational and its sole object was to encourage and induce the primary employees to affiliate themselves with the local union. The trial court apparently

gave little credence or weight to the equivocal and evasive testimony on which the contention necessarily rested.[1] It held, in effect, that an object of the picketing was to encourage and induce the secondary employees to engage in a concerted refusal to work in order to coerce and restrain their neutral employer, in violation of § 8(b) (4) (i) (ii) (B), supra. This conclusion was amply supported by the evidentiary facts from which it was derived. There is nothing in the record to indicate that the ultimate decision of the court below was based on an erroneous view of the law.

■■ Where picketing is carried on at a common situs it is frequently difficult to draw the line between permissible conduct and that which is proscribed by the statute. The determinative factor is the object of the challenged activity. Picketing directed solely against a primary employer, and otherwise lawful, does not become unlawful simply because it may influence the conduct of the secondary employees and adversely affect their neutral employer. National Labor Relations Board v. International Rice Milling Co., 341 U.S. 665, 71 S.Ct. 961, 95 L.Ed. 1284 (1951); National Labor Relations Bd. v. General Drivers, etc., 225 F.2d 205, 210 (5th Cir. 1955), cert. den. 350 U.S. 914, 76 S.Ct. 198, 100 L.Ed. 801. However, if an object of the picketing is to encourage and induce the secondary employees to engage in a concerted refusal to work in order to coerce and restrain their neutral employer, the activity is within the statutory prohibition. National Labor Relations Board v. Denver Bldg. & Const. Trades Council, 341 U.S. 675, 689, 71 S.Ct. 943, 95 L.Ed. 1284 (1951); International Brotherhood of Electrical Workers v. National Labor Relations Board, 341 U.S. 694, 700–706, 71 S.Ct. 954, 95 L.Ed. 1299 (1951); Superior Derrick Corp. v. N. L. R. B., 273 F.2d 891, 896 (5th Cir. 1960), cert. den. sub nom. 364 U.S. 816, 81 S.

Ct. 47, 5 L.Ed.2d 47. This principle was correctly applied by the court below.

■ The plaintiff asserted a claim for damages in the amount of $18,000. The court below eliminated certain of the items included therein, reduced the claim to $2,541.13, and entered judgment accordingly. The defendant argues generally that the award of damages under the facts of this case was improper. We cannot agree. It is also argued that legal expenses incurred in the filing of the unfair labor practice charge is not a proper element of damage. This Court has heretofore ruled to the contrary. Aircraft & Engine Maintenance, etc. v. I. E. Schilling Co., 5 Cir., 340 F.2d 286, 289 (1965); see also Local Union 984, Int. Bro. of Teamsters, etc. v. Humko Co., supra, 287 F.2d 243 (6th Cir. 1961), cert. den. 336 U.S. 962, 81 S.Ct. 1922, 6 L.Ed.2d 1254.

The judgment of the court below is affirmed.

---

1. The defendant called as witnesses its business agent and his assistant who were responsible for the maintenance of the picket line. Their testimony was anything but forthright.