BRYANT AIR CONDITIONING AND HEATING CO., INC., Appellee,

v.

SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, LOCAL NO. 541, AFL–CIO, Appellant.

No. 71–1710.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1972.

Decided Feb. 13, 1973.

David D. Weinberg, Omaha, Neb., for appellant.

Charles E. Sykes, Lincoln, Neb., for appellee.

Before LARAMORE, United States Court of Claims Judge,* and BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

In this action brought pursuant to § 303 (29 U.S.C. § 187) of the Labor Management Relations Act, Bryant Air Conditioning and Heating Co., Inc., (Bryant) sought damages from Sheet Metal Workers' International Association, Local No. 541, AFL–CIO, (Local 541) for threatening to picket a neutral general contractor for the proscribed object of forcing that contractor to cease doing business with Bryant, the employer with whom Local 541 had a labor dispute. The district court awarded damages to Bryant in the amount of $711.88 and attorney's fees. The union has appealed. We affirm on the merits but disallow attorney's fees.

The facts adduced at trial will be briefly recapitulated here. R. W. Kroeger Construction Company (Kroeger Construction) contracted with International House of Pancakes to construct a building in Lincoln, Nebraska. Kroeger Construction subcontracted certain sheet

* Sitting by designation.

metal work on the project to Mel's Heating & Air Conditioning of Omaha, Nebraska, (Mel's) which in turn subcontracted the same work to Bryant.

Mr. Richard K. Snook, an officer and agent of Local 541, and Mr. Arthur Hitz, a union member who was sometimes paid to picket, visited Mr. Robert Kroeger, owner of Kroeger Construction, at the jobsite on April 27, 1970. Mr. Hitz carried a picket sign on which appeared certain lettering which Mr. Kroeger was unable to read because the lettering was turned toward Mr. Hitz's body. Mr. Snook questioned Mr. Kroeger as to whether Bryant was going to work on the project. Mr. Kroeger responded that Mel's had a subcontract on the job and that Mel's had in turn subcontracted with someone else who might be Bryant. Snook then informed Kroeger that the union had a dispute with Bryant and that, if Bryant came on the job, it would picket the jobsite.

After the conversation with Snook, Kroeger called Mel's and told them to contact Bryant because the job would be picketed if Bryant did any work at the jobsite. Immediately after this telephone call, two men from Bryant drove a truck onto the jobsite, but Kroeger refused to allow them to unload it and told them to call their office for information.

Mel's informed Bryant of the difficulty on the jobsite and when Bryant's comptroller talked with Kroeger at the site, he was told that Bryant could not work there, even during other than normal working hours or at night. Mr.

Kroeger's reasons were that the National House of Pancakes did not want the job to be delayed by labor disputes and Kroeger's bonus arrangement depended on completing the job by a specified date.

Bryant performed no work at the jobsite and received none of the $3,890 which it was to receive from Mel's for providing labor and sheet metal materials.

On the basis of these facts, the district court held: (1) that Snook's unqualified threat to picket Kroeger Construction threatened a secondary boycott in violation of the provisions of 29 U.S.C. § 158(b)(4)(ii), which subsection defines as an unfair labor practice the use of coercion against any person engaged in commerce or in an industry affecting commerce with the object of forcing such person to cease doing business with any other person;[1] (2) that Kroeger was "doing business" with Bryant within the context of § 158(b)(4)(ii) since, " * * * Kroeger [general contractor] was dependent upon Bryant [sub-subcontractor] for personnel and materials in order to complete Kroeger's obligation to build the building, and * * * such dependence constitutes 'doing business' with Bryant;" (3) that the threat in this case did not contemplate a lawful primary strike within the proviso of the statute since the threat did not indicate that the picketing would be limited to times when Bryant was on the job nor that the picketing would be confined to advertising the union's dispute with Bryant only; and (4) "that

---

1. The statute, as relevant, reads:

    (b) It shall be an unfair labor practice for a labor organization or its agents—

    * * * * *

    (4) * * * (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

    * * * * *

    (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: *Provided*, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing[.]

the defendant-union did threaten to picket Kroeger where an object thereof was to force or require Kroeger to cease doing business with Bryant."

■ On this appeal, appellant characterizes the Snook statements as not "threatening or coercive in nature" but merely informative of a dispute which would extend to the jobsite when Bryant's employees or materials reached the site. We reject the appellant's characterization. The record contains substantial evidence justifying the trial court's ultimate finding that the language and conduct of the union's representatives, Snook and Hitz, effectively conveyed the message that unless Kroeger kept Bryant off the jobsite, the union would engage in general picketing. Thus the trial court's findings were not clearly erroneous.

■ The district court properly determined that Snook's language did not threaten primary picketing permitted by the Act. Lawful primary picketing must be limited in scope and confined to times when the primary employer is on the jobsite. Sailors' Union of the Pacific (Moore Dry Dock), 92 NLRB 547 (1950); see NLRB v. Carpenters District Council of Kansas City, 383 F.2d 89 (8th Cir. 1967). We think the district court properly distinguished between the unqualified threat made in this case and a statement of intent to picket lawfully. See NLRB v. District Council of Painters #48, 340 F.2d 107 (9th Cir. 1965); General Drivers, Chauffeurs and Helpers, Local 886, 133 NLRB 1393 (1961).

■■ We hold that the district court properly determined that "doing business" as used in § 158(b)(4)(ii)(B) is not limited to contractual relationships. Although the parties have not called any cases to our attention specifically defining the scope of "doing business," we note that courts have found relationships similar to that between Bryant and Kroeger to fall within the "doing business" concept of this statute. See, e. g., NLRB v. United Brotherhood of Carpenters, Local 180, 462 F.2d 1321 (9th Cir. 1972); International Association of Heat & Frost Insulators, Local 12, 193 NLRB No. 4 (1971), enforced, 80 LRRM 2028 (2d Cir. 1972).

## ATTORNEY'S FEES

■ The district court relied upon our affirmance of an award of attorney's fees in a § 301 suit, United Steelworkers of America v. Butler Manufacturing Co., 439 F.2d 1110 (8th Cir. 1971), as a basis for awarding attorney's fees in this § 303 suit. We do not find this analogy persuasive and reverse this portion of the district court's judgment.

Relying on the legislative history of § 303 of the Act, the Supreme Court has stated that an employer's recovery of losses caused by union activity proscribed by § 303 should be limited to "actual compensatory damages." Teamsters Local 20 v. Morton, 377 U.S. 252, 260, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964). Additionally, the concept of awarding attorney's fees for § 303 litigation has been rejected by other courts. Sheet Metal Workers, Local 223 v. Atlas Sheet Metal Co., 384 F.2d 101, 110 n. 10 (5th Cir. 1967); Teamsters Local 984 v. HumKo Co., 287 F.2d 231, 243–244 (6th Cir. 1961);[2] Navios Corp. v. National Maritime Union, 236 F.Supp. 657, 662 (E.D.Pa.1964), aff'd, 359 F.2d 853 (3d Cir. 1966). Appellees have directed us to no case which has authorized attorney's fees for prosecuting a § 303 action. In light of the legislative history and the reasoning in similar cases, we decline to authorize attorney's fees in this § 303 action.

2. In *Atlas Sheet Metal Co.* and *HumKo,* the courts permitted recovery of costs of reasonable legal action to effect a resumption of work, but not for attorney's fees in prosecuting the § 303 suit. *Cf.* Mason-Rust v. Laborers' International Union, Local 42, 435 F.2d 939 (8th Cir. 1970); H. L. Robertson & Associates, Inc. v. Plumbers Local No. 519, 429 F. 2d 520 (5th Cir. 1970); Construction and General Laborers, Local 438 v. Hardy Engineering and Construction Co., 354 F.2d 24 (5th Cir. 1965).