Richard D. CURREN, Warren E. Eddy, W. P. Mantz, and Dempsey Keene

v.

Wilbur FREITAG, Herschel Ward, Roland Bruning, Carl Moore, Clifford Rygh, Gregory Hasty, Ramon Wierman, Thomas Crabtree, Robert Neff, Kenneth Price, Charles E. Moore, Hugh B. Arnold, and Central Laborers Pension Fund.

No. 76–0061.

United States District Court, S. D. Illinois, S. D.

June 10, 1977.

Gerald Tockman, St. Louis, Mo., Edward Casey, Springfield, Ill., Jay G. Swardenski, Peoria, Ill., for plaintiffs.

Kevin M. Forde, William J. Harte, Chicago, Ill., Robert E. Gillespie, Springfield, Ill., Larry J. Flynn, Jacksonville, Ill., Robert G. Heckenkamp, Springfield, Ill., for defendants.

## MEMORANDUM AND ORDER

ACKERMAN, District Judge.

This case involves various charges and countercharges between two factions on the Central Laborers Pension Fund [hereinafter Fund] Board of Trustees. The Fund is a trust established in accordance with the provisions of 29 U.S.C. § 186(c)(5) which, *inter alia*, requires equal representation by employers and employees in the administration of the Fund. The Fund and its employees are subject to the provisions of the Employee Retirement Income Security Act of 1974 [hereinafter ERISA] 29 U.S.C. §§ 1001 *et seq.*

Plaintiffs, the trustees appointed by the employers, filed this action on May 18, 1976, alleging numerous defects in the structure and operation of the Fund and seeking to hold trustees representing the employees personally liable under ERISA provisions. The complaint survived defendants' motion to dismiss for failure to state a claim on which relief can be granted. Defendants however have filed a two count counterclaim also based on alleged violations of ERISA. The matter is now before me on plaintiffs' motion to dismiss Counts I and II of the counterclaim and on defendants' motion for summary judgment on Count I as well as other motions requiring little discussion and dealt with at the end of this opinion.

Count I of the counterclaim purports to state a claim against plaintiff Curren individually alleging that Curren has violated 29 U.S.C. §§ 1106(b)(2) and (3), ERISA § 406(b)(2) and (3), in that plaintiff Curren is actively representing certain contractors who are resisting audits ordered by the Fund and refusing to pay amounts determined owing by these contractors to the pension fund. Count II alleges that all the plaintiff trustees have violated 29 U.S.C. § 1106(b)(2) through the prosecution of this lawsuit, since it allegedly is for the benefit of the employer contractors and not for the benefit of the Fund.

Central Laborers Pension Fund is a trust administering more than the $20,000,000 in assets with its principal office in Jacksonville, Illinois. The Fund was established by a trust agreement which required sixteen trustees, eight appointed by the employees' union (Laborers Local Union No. 253) and eight from the employer associations (four appointed by Associated General Contractors of Illinois and four appointed by Morgan County Contractors Association) in accord with 29 U.S.C. § 186(c)(5)(B). Plaintiffs Curren, Eddy, Mantz and Keene were appointed by Associated General Contractors of Illinois (AGCI). Plaintiff Curren is employed by AGCI as Director of Labor Relations. Defendants Freitag, Ward, Bruning, Moore, Rygh, Hasty, Wierman, Dickman and Holland are trustees appointed by Local No. 253, while defendants Crabtree, Neff, Price and Moore were appointed by the Morgan County Contractors Association.

Defendants filed a motion for summary judgment on Count I of the counterclaim pursuant to Federal Rule of Civil Procedure 56 contending that the pleadings, documents and deposition of plaintiff Curren establish that there are no genuine issues of material fact and that counterplaintiffs are entitled to judgment as a matter of law. Also pending concerning Count I of the counterclaim is plaintiff's motion to dismiss pursuant to F.R.Civ.P. 12(b) for failure to state a claim upon which relief can be granted. Since I have examined matters outside the pleadings, specifically Curren's deposition, these motions will be treated as cross motions for summary judgment under F.R.Civ.P. 56 as provided in F.R.Civ.P. 12(b).

The contention in the counterclaim is that plaintiff Curren, in violation of 29 U.S.C. §§ 1106(b)(2) and (3), is actively representing certain contractors in resisting audit and collection efforts of the Fund and receiving a fee therefor. The statute, dealing with prohibited transactions under ERISA, provides that:

(b) A fiduciary with respect to a plan shall not:

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan. 29 U.S.C. § 1106.

More specifically, in counterplaintiffs' motion for summary judgment it is contended that contrary to Curren's duty as a trustee of the Fund to take such action as necessary to insure that employers contribute to the Fund that which they are contractually obligated to contribute, counterdefendant Curren actively represented two employers, Coggeshall Construction Company and Burlington Road Builders, in resisting audit and collection procedures brought on behalf of the Fund. Both companies are being sued by the plaintiffs in this Court for allegedly delinquent payments to the Fund. Curren counseled both companies to resist Fund audits and refuse payments since, in his opinion, the audits and subsequent lawsuits were not properly authorized, but were brought merely to apply pressure during labor negotiations pending between Coggeshall and the laborers union. Curren also suggested specific legal counsel to both Coggeshall and Burlington, and held meetings concerning their defense in his office.

Further, it is alleged and counterdefendant Curren states in his deposition that he issued a "bulletin" to all AGCI members advising them that Fund auditors were not properly authorized and asking to be contacted by any members of AGCI who had any questions.

This conduct was but a portion of a continuing conflict between Curren and the defendant Arnold, a Chicago attorney, who had allegedly been improperly hired by the Fund to pursue collection efforts against individual contractors. It certainly appears that the prime motivating factor in counterdefendant Curren's actions was the belief, as plaintiffs have alleged in their complaint, that not only was Arnold using the Fund and its audit procedures to apply pressure on individual contractors for his own purposes, but that Arnold had not properly been authorized to act on behalf of the Fund at all.

Throughout the conduct complained of, Curren acted not only as a trustee for the Fund but pursuant to his duties as Director for Labor Relations for AGCI. Those duties as described in his deposition, consisted of negotiating and administering collective bargaining agreements on behalf of AGCI and its collective and individual members.

Counterplaintiff would have me believe that the actions of Curren on behalf of AGCI were "at total war" with his obligations as a trustee for the Fund, and that the state of the law is such that Curren could not perform both as trustee and as Labor Relations Director for AGCI. Admittedly, there may be an inherent conflict between the ERISA fiduciary duty and prohibited transaction provisions [29 U.S.C. §§ 1104 and 1106] and the provisions of the Labor Management Relations Act requiring equal representation by labor and management in the control of employee trust funds [29 U.S.C. § 186(c)(5)]. However, this conflict is lessened by the language in 29 U.S.C. § 1108(c)(3) which provides:

(c) Nothing in Section 1106 of this title shall be construed to prohibit any fiduciary from . . .

(3) serving as a fiduciary in addition to being an officer, employee, agent or other representative of a party in interest.

Given this statutory provision, it is not per se improper for Curren to act both as trustee and as Labor Relations Director for AGCI. Thus, the portion of the counterclaim based on 29 U.S.C. § 1106(b)(3) is unfounded since it is established by the depositions and memoranda filed that Curren received no "consideration for his personal account" other than his AGCI salary. Due to the language of 29 U.S.C. § 1108(c)(3) quoted above, I believe as a

matter of law that Curren's AGCI salary cannot form the basis of a complaint under § 1106(b)(3).

■ While the elements of the counterclaim citing 29 U.S.C. § 1106(b)(2) present a somewhat more difficult question, I believe the same result follows. As stated in the previous paragraphs, 29 U.S.C. § 1108(c)(3) establishes that there is nothing improper about Curren acting both as a trustee and as Labor Relations Director for AGCI. A portion of Curren's responsibilities as Labor Relations Director is to advise and counsel AGCI members concerning contract negotiations. Given Curren's beliefs concerning the propriety of the Fund's auditing operation and his beliefs as to the reasons for particular audits, as seen through the allegations of this complaint, he would have been remiss in his duties as Labor Relations Director to stand mute.

Since the Act allows him to act in both capacities, it is illogical that it would require him to forgo the giving of advice and assistance he would have been expected to give were he not a trustee. It certainly is not alleged that his actions would be anything but appropriate except for his status as trustee.

The question at issue then is whether counseling parties to resist audits and to refuse payment to the Fund, suggesting of specific legal counsel to them, participating in meetings concerning their legal defense and issuing a "bulletin" advising adverse parties of an allegedly improper collection effort, constitutes acting on behalf of an adverse party in any transaction involving the plan within the meaning of 29 U.S.C. § 1106(b)(2).

According to the conference committee, the purpose of § 1106(b)(2) is to prevent "a fiduciary from being put in a position where he has dual loyalties, and, therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries." *U. S. Code Cong. and Admin. News*, 1974, pp. 4639, 5089. Clearly, however, certain dual loyalties are permissible as established by the language quoted above from § 1108(c)(3). A broad reading cannot be given to both sections.

To effect the broad reading of § 1106(b)(2) sought here by counterplaintiff would require a fiduciary who also serves as an employee of a party in interest as permitted by § 1108(c)(3) to neither inform nor counsel his employer of his opinion of the propriety of actions taken by the fund. In short, such person would require a bifurcated personality. As a fiduciary, the actions of his co-fiduciaries must be known and acted upon but he would be required to remain silent and inactive in his capacity as an employee of a party in interest.

This construction appears to me to be unreasonable and unworkable especially in light of the provisions of the Labor Management Relations Act pursuant to which this particular fund was established which requires employees and employers to be equally represented in administering the Fund. 29 U.S.C. § 186(c)(5)(B).

■ A preferable construction, it seems, would prevent the fiduciary from being placed in a position where he was dealing with the Fund on behalf of his employer in a matter concerning the assets of the Fund. "Dealing" in this context should mean that the fiduciary is possessed with the power to compromise the positions of his employer, or the Fund or both. For example, the act should prohibit a fiduciary who was appointed by the contractors' association from being placed in a position which would authorize him to accept on behalf of the Fund, an amount less than the amount due the Fund in settlement of a Fund claim against an individual contractor. On the other hand, the act should not prohibit a fiduciary from counseling the individual contractor that the Fund might accept less than the full amount due in settlement of a Fund claim. In other words the act must be construed to differentiate between advocating a course of action or a solution and having the power to take that course or implement that solution.

The facts here do not show Curren possessed of this type of power. Curren's actions consisted of providing his opinion as to

the propriety of fund actions, his advice as to the best way to proceed and perhaps seeking out individuals to hear his opinions and advice.

Curren's actions, of course, are in a general way adverse to the interests of the beneficiaries, since if followed it would mean at minimum, increased, collection costs for the Fund. However, the actions complained of could best be characterized as giving aid and comfort to an adverse party. Those actions, in my opinion, do not constitute acting in a transaction involving the Fund on behalf of an adverse party within the meaning of 29 U.S.C. § 1106(b)(2).

In light of the foregoing, counterdefendant Curren's motion for summary judgment on Count I of the counterclaim will be granted since there are no genuine issues of material fact and since he is entitled to judgment as a matter of law.

■ Count II of the counterclaim names all the plaintiff trustees as counterdefendants and alleges that the bringing of this action in and of itself, violates 29 U.S.C. § 1106(b)(2) since allegedly the plaintiff trustees are acting for the benefit of AGCI employers and against the interests of the Fund. Counterdefendants have moved pursuant to F.R.Civ.P. 12(b) to dismiss this count for failure to state a claim on which relief may be granted.

Given the fact that the majority of plaintiffs' complaint has survived defendants' motion to dismiss, defendants' theory on Count II of the counterclaim plainly stated, is that given an improper motivation, § 1106(b)(2) prohibits fiduciaries from asserting colorable claims of breach of fiduciary duty in this or any other forum.

Congress, in ERISA section 405(a)(3), 29 U.S.C. § 1105(a)(3), provided that a fiduciary having knowledge of a breach of fiduciary duty by a co-fiduciary may be liable for that breach unless he makes "reasonable efforts under the circumstances to remedy the breach." It seems unlikely that Congress intended a fiduciary to be inhibited in his power to seek to remedy a breach of fiduciary duty, regardless of his ultimate motive.

■ I believe that as a matter of law, a fiduciary who seeks to remedy at least colorable breaches of fiduciary duty by his co-fiduciaries through civil litigation cannot be said to have violated 29 U.S.C. § 1106(b)(2) regardless of this motivation for bringing the action. ERISA does not require a fiduciary to stand mute because calling attention to breaches of fiduciary duty would inure to the benefit of the party in interest who secured his position as a fiduciary.

Count II of the counterclaim shall be dismissed for failure to state a claim upon which relief may be granted.

As to the other pending motions in this cause, they are dealt with in summary fashion below:

(1) Counterplaintiffs' motion for summary judgment on Count I of the counterclaim is denied.

(2) Counterdefendants' motion for summary judgment on Count I of the counterclaim is granted.

(3) Counterdefendants' motion to dismiss Count II of the counterclaim is granted.

(4) Motion of Giffin, Winning, Lindner, Newkirk, Cohen and Bodewes for leave to withdraw as attorneys for plaintiff is allowed.

(5) Defendants' motion to amend counterclaim filed December 8, 1976, is allowed.

(6) Defendants' motion to amend answer filed February 1, 1977, is allowed.