577 F.2d 16
 98 L.R.R.M. (BNA) 2344, 83 Lab.Cas. P 10,588
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
CONSTRUCTION & GENERAL LABORERS' UNION LOCAL 1140,
affiliated with International Laborers' Union of
North America, AFL-CIO, Respondent.
 No. 19297.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 15, 1978.
Decided May 8, 1978.
Rehearing and Rehearing En Banc Denied June 14, 1978.
 
 1
 David D. Weinberg of Weinberg & Weinberg, Omaha, Neb., for respondent, Construction & General Laborers' Union, Local 1140.
 
 
 2
 Ann Libbin, Atty., N. L. R. B., Washington, D. C., argued, Paul Elkind, Asst. Gen. Counsel, for Contempt Litigation, Charles P. Donnelly and Anne E. Libbin, Attys., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., on brief, for petitioner, N. L. R. B.
 
 
 3
 Before VAN OOSTERHOUT, Senior Circuit Judge, HENLEY, Circuit Judge, and HANSON,* Senior District Judge.
 
 
 4
 HANSON, Senior District Judge.
 
 
 5
 This matter comes before us on the exceptions filed by petitioner National Labor Relations Board (the Board) and respondent Construction & General Laborers' Union Local 1140 (the Union) to the report of the Special Master[1] submitted pursuant to this Court's Order of Reference of December 16, 1975. We reject the respective exceptions of the parties, adopt the Special Master's finding that the Union is in contempt of this Court's prior orders of May 13, 1968 and February 9, 1972 for having engaged in proscribed secondary activity at three separate construction sites in Nebraska, and assess a fine and impose other sanctions as delineated below.
 
 
 6
 On May 13, 1968 this Court entered a consent decree enforcing an order of the Board against the Union. Among other things, said decree directed respondent to cease and desist from:
 
 
 7
 (a) Inducing or encouraging individuals employed by . . . any . . . employer or person engaged in commerce or in an industry affecting commerce, to engage in a strike or refusal in the course of their . . . employment to use, manufacture, process, transport, or otherwise handle or work on any goods, materials, articles, commodities, or to perform any services, where an object thereof is to force or require any . . . employers or persons to cease doing business with . . . any other employer or person.
 
 
 8
 (b) Threatening, coercing or restraining . . . any . . . employer engaged in commerce or in an industry affecting commerce, where an object thereof is to force or require any employers or persons to cease doing business with . . . any other employer or person.
 
 
 9
 The above language tracks pertinent portions of Section 8(b)(4)(B) of the National Labor Relations Act (NLRA) as amended by the Landrum-Griffin Act of 1959, 29 U.S.C. §§ 158(b)(4)(B).[2] The Act condemns as an unfair labor practice certain kinds of union activity an object of which is to enmesh neutral secondary employers in primary labor disputes between the union and another employer. See, e. g., Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 386-90, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969); NLRB v. Carpenters District Council of Kansas City, 383 F.2d 89, 93-94 (8th Cir. 1967).
 
 
 10
 On March 9, 1971 the Board sought an adjudication from this Court that the Union was in civil contempt of the 1968 decree. Acting upon the report and recommendation of a Special Master,[3] the Court entered an order, to which the Union consented, finding respondent Union in civil contempt. In said order, dated February 9, 1972, the Court directed the Union to purge itself of contempt by adhering to the command of the 1968 decree, viz., by refraining from the type of activity prohibited by Section 8(b)(4)(B). The order went on to warn
 
 
 11
 (T)hat upon the failure of the respondent, its officers, agents, successors and assigns, to comply with any of the purgation provisions hereinabove provided by this order, this Court will deal further with the matter by imposing a fine of $5,000 on the respondent, and an additional fine of $500 per day so long as such non-compliance of this order or of the decree continues, and by such other means as the Court shall determine, including the issuance of body attachment upon any officer or agent responsible for such non-compliance.
 
 
 12
 The Board returned to this Court on August 22, 1975 alleging respondent Union's violation of the 1968 judgment and 1972 purgation order and seeking a second contempt adjudication. This Court subsequently appointed Senior District Judge Van Pelt as Special Master to take evidence and make recommended findings of fact and conclusions of law. Prior to the hearing before the Special Master, amendments to the Board's August 22, 1975 motion were permitted in order to embrace two other alleged instances of contumacious conduct. The Special Master's report was filed November 14, 1977. The Master found that the Union had engaged in secondary activity violative of the 1968 and 1972 orders and recommended sanctions as hereinafter discussed.
 
 I.
 
 13
 As the party seeking a contempt adjudication, the Board bears the burden of establishing such contempt by "clear and convincing evidence." NLRB v. Ralph Printing and Lithographing Co., 433 F.2d 1058, 1062 (8th Cir. 1970), cert. denied, 401 U.S. 925, 91 S.Ct. 883, 27 L.Ed.2d 829 (1971). Upon review of a Special Master's findings of fact in this regard, we are required to sustain said findings unless they are clearly erroneous. Rule 53(e)(2), F.R.Civ.P.; Ralph Printing, supra at 1063. We have carefully reviewed the factual findings of the distinguished Special Master and find that they are abundantly supported by the evidence. Similarly, we discern no error in the Master's application of the relevant law. Thus, we conclude that the Board has, by clear and convincing evidence, demonstrated that the Union engaged in unlawful secondary activity proscribed by the Court's prior decrees of May 13, 1968 and February 9, 1972.
 
 II.
 
 14
 Though we reject the Union's arguments on appeal insofar as they are premised on challenges to the Master's factual findings, the Union attempts to raise one legal issue which merits comment by the Court.
 
 
 15
 The alleged contumacious conduct involved Union picketing and related coercive acts for the purpose of causing neutral secondary employers to cease doing business with other employers with whom the Union had a primary labor dispute. The challenged conduct occurred at three construction sites in eastern Nebraska. In each case the Master found that the Union had unlawfully attempted to force either a subcontractor or general contractor at a common situs to cease doing business with another situs employer. See, e. g., NLRB v. Denver Building Construction Trades Council, 341 U.S. 675, 685-90, 71 S.Ct. 943, 95 L.Ed. 1284 (1951); Bricklayers and Stone Masons Local No. 2 v. NLRB, 562 F.2d 775, 784-85 (D.C.Cir. 1977); Bryant Air Conditioning and Heating Co. v. Sheet Metal Workers Local 541, 472 F.2d 969, 971-72 (8th Cir. 1973).
 
 
 16
 At two of the construction sites in question the Army Reserve Center site in Fremont, Nebraska and the Glad Tidings Assembly Church site in Omaha, Nebraska part of the alleged unlawful activity included picketing of secondary employers[4] purportedly on behalf of the Contractors, Laborers, Teamsters, and Engineers Health and Welfare and Pension trusts (the CLT&E trusts) to enforce contribution requirements in connection with which said secondary employers were asserted to be delinquent. The picketing was arranged by a Union trustee of the CLT&E trusts, Leonard J. Schaefer, who also serves as the Union's business manager and secretary-treasurer. The Union argues that the picketing to enforce trust fund contribution requirements cannot be attributed to the Union since Schaefer was acting as a trustee in arranging the picketing.
 
 
 17
 The Special Master found, in essence, that the CLT&E trust picketing was pretextual and had, in both cases, a purpose of impermissibly furthering Union goals by causing a cessation of business between primary and secondary employers. On the facts found by the Master, this conclusion is compelling.
 
 
 18
 The fact patterns at both the Reserve Center site and Glad Tidings Church site share three common elements: (1) In both instances the secondary employer against whom CLT&E trust picketing was directed had not posted a required cash bond in support of its obligations to the trust funds, though apparently neither secondary employer was apprised of this requirement before CLT&E trust picketing against it began. (2) The picket signs directed against the secondary employers at the Reserve Center and Glad Tidings sites identified the alleged trust-oriented purpose of the picketing and were attributed to "Leonard J. Schaefer, trustee."[5] (3) Lastly, from the circumstances surrounding the picketing, it is apparent that a primary object thereof at both construction sites was to cause a cessation of business between neutral secondary employers and an employer at the jobsite with whom the Union had a primary labor dispute.
 
 
 19
 The Union incorrectly asserts that the issue presented by these circumstances is whether a union trustee of an employee benefit trust authorized by Section 302(c)(5) of the Labor Management Relations Act (LMRA), 29 U.S.C. 186(c)(5), is an agent of the union for the purposes of Section 8(b) of the NLRA. Cf. NLRB v. Carpenters Local No. 1913, 531 F.2d 424, 426-27 (9th Cir. 1976). To the contrary, the question here is simply whether Schaefer, who is both a union officer and a trustee, was operating on behalf of the Union or the trust beneficiaries when he authorized and directed the picketing of secondary employers. This is a finding of fact. We read the Master as finding that the purported trust picketing was motivated primarily by a desire to advance Union goals.[6] As noted, that finding is not clearly erroneous.
 
 
 20
 We are mindful of the fact that the conduct and responsibilities of trustees of a Section 302 trust are extensively regulated by the provisions of the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. § 1001 et seq. We recognize also that if, as a general proposition, Section 302 trustees were viewed in the discharge of their trust duties as both fiduciaries and agents of the employer or employee organization who designated them,[7] the trustees might in some circumstances be placed in a position of conflict of interest. See Nedd v. United Mine Workers of America, 556 F.2d 190, 209-10 (3d Cir. 1977), cert. denied, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978); Toensing v. Brown, 528 F.2d 69, 72 (9th Cir. 1975); Marshall v. Snyder, 430 F.Supp. 1224, 1231-32 (E.D.N.Y.1977); Blankenship v. Boyle, 329 F.Supp. 1089, 1094 (D.D.C.1971); Sheet Metal Workers' International Assoc., 234 NLRB No. 162 (March 8, 1978). This case, however, does not pose such a problem.
 
 
 21
 Section 408(c)(3) of ERISA permits an individual to serve as a Section 302 trustee "in addition to being an officer, employee, agent, or other representative" of an employer or employee organization. 29 U.S.C. § 1108(c) (3). Thus, there is nothing in ERISA or the LMRA to prohibit a person in Schaefer's position from operating in separate spheres as an officer of a union and a Section 302 trustee. However, ERISA Section 404(a)(1) admonishes trustees to discharge their fiduciary duties "solely in the interest of the participants and beneficiaries" of the benefit plan and "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries."[8] 29 U.S.C. § 1104(a)(1). Clearly, a benefit plan trustee who, as here, uses a relatively minor deficiency in employer performance of obligations to the trust as a pretext for picketing intended to promote union goals, does not act solely in the interest of the employee participants and beneficiaries. It follows that Schaefer's conduct intended to support the interests of a third party (the Union) was beyond the scope of his authority as a trustee. Accordingly, we hold only that in using his position as trustee to accomplish Union objectives, Schaefer was acting not as a trustee, but as a Union agent. The designation on a picket's placard and the existence of a dispute, however minor, between a Section 302 trust fund and an employer does not insulate a labor union from responsibility under Section 8(b) of the National Labor Relations Act for what is manifestly union conduct.
 
 III.
 
 22
 Our purgation order of February 9, 1972 provided that in the event of non-compliance therewith "this Court will deal further with the matter by imposing a fine of $5,000 on the respondent, and an additional fine of $500 per day so long as such non-compliance . . . continues . . . ." Whether the $5,000 figure would apply to each separate incident of unlawful activity is not completely clear from the 1972 order. In any event, we consider a total fine of.$19,000 to be fully sufficient in the circumstances here. This figure represents $5,000 plus $500 per day for a total of 28 days on which the Master found the Union engaged in unlawful activity. We emphasize that we determine the amount of the fine here on the basis of what we deem to be just, and not necessarily because we feel that our 1972 order locks us into a specific amount.
 
 
 23
 Both the Master and the Board suggest that we style an order indicating that a fine against the Union at twice the rate employed here will ensue in the event of a recurrence of contumacious conduct. We have adopted this suggestion as an appropriate indication of the severity with which we would likely view a third contempt adjudication. In do doing, however, we stress that no specific fine would follow automatically. An appropriate sanction would, in the final analysis, be a function of the nature of the conduct and the length of intervening time in which the Union has complied with our orders.
 
 
 24
 The Board excepts to the Master's recommendation excluding an award of attorney's salaries. We concur with the Master and award costs excluding attorney's salaries.
 
 
 25
 For all of the foregoing reasons,
 
 
 26
 IT IS ORDERED that the Master's findings of fact and conclusions of law be and hereby are adopted in their entirety.
 
 
 27
 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Construction and General Laborers Local 1140, AFL-CIO is in civil contempt of this Court and that said Union, through its officers and agents shall purge itself of said contempt by:
 
 
 28
 1. Paying to the National Labor Relations Board, for deposit in the United States Treasury, a fine of.$19,000.
 
 
 29
 2. Fully complying with and obeying the order of the National Labor Relations Board enforced by this Court's decree of May 13, 1968, and fully complying with and obeying this Court's order on Contempt of February 9, 1972.
 
 
 30
 3. Immediately posting in conspicuous places in its business offices, meeting halls, and all places where notices to employees are customarily posted, for a period of sixty (60) consecutive days, copies of the Court's order herein, and a notice in the form to be supplied by the Board, signed by an appropriate officer on behalf of the Union, which states that the Union has been adjudged in civil contempt for violating and disobeying the Court's judgment of May 13, 1968 and for violating and disobeying the Court's judgment of February 9, 1972, and that it will forthwith undertake the action ordered in purgation, such notices together with a copy of the contempt adjudication to be maintained in clearly legible condition throughout such posting period, and insure that such notices are not altered, defaced or covered by any other material.
 
 
 31
 4. Signing and mailing copies of said notice to the Regional Director for the Seventeenth Region of the Board, for posting by Kealey Construction Company; BDJ Construction Company; Knudson, Inc.; Kahler Construction, Inc.; Lanco Corporation; L. A. Structural, Inc.; and Underwood Constructors, Inc., at their respective offices, if such employers be willing.
 
 
 32
 5. Signing and mailing copies of said notice and the adjudication to all employers in the construction industry with whom the Union has signed a participation agreement; and furnishing the Regional Director for the Seventeenth Region with a list of all employers to whom said notice and adjudication has been mailed, together with proof of mailing thereof.
 
 
 33
 6. Reading aloud said notice, by an officer of the Union at the next regularly scheduled or specially called meeting of the membership, whichever is the sooner.
 
 
 34
 7. Filing separate sworn statements in writing with the Clerk of the United States Court of Appeals for the Eighth Circuit, and a copy thereof with the Regional Director of the Seventeenth Region of the Board within thirty (30) days after the entry of this Court's order and again upon termination of the posting period, showing what steps have been taken by the Union to comply with this Court's decision.
 
 
 35
 8. Paying the Board all costs and expenses incurred in the preparation for and final disposition of this proceeding, exclusive of attorney's salaries or the expenses of investigation, upon submission by the Board of a verified bill of costs.
 
 
 36
 In the event of the failure of respondent, its officers and agents to purge itself of contempt as herein provided, this Court will deal further with the matter by considering the imposition of a compliance fine of $10,000 for each separate place where unlawful secondary activity occurs, together with a additional fine of $1,000 for each additional day on which such unlawful activity continues at each location or locations, and by such other means as the Court may direct, including the issuance of body attachment upon any officer or agent responsible for such non-compliance.
 
 
 37
 IT IS SO ORDERED.
 
 
 
 *
 The Honorable William C. Hanson, Senior District Judge, Southern District of Iowa, sitting by designation
 
 
 [1]
 The Honorable Robert Van Pelt, Senior District Judge, District of Nebraska
 
 
 [2]
 29 U.S.C. § 158(b) provides in relevant part:
 (b) It shall be an unfair labor practice for a labor organization or its agents
 (4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is:
 (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person . . .: Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing(.)
 
 
 [3]
 The Honorable Robert Van Pelt, Senior District Judge, District of Nebraska, was also designated as Special Master in the prior proceeding
 
 
 [4]
 The secondary employers in question were general contractor Knudson, Inc., at the Reserve Center site, and masonry subcontractor Underwood Constructors, Inc., at the Glad Tidings site. Three other subcontractors were also affected by picketing directed at Underwood. The Court notes that though Underwood had a primary labor dispute with the Union before the CLT&E trust picketing occurred, at the time of said picketing that dispute had been resolved
 At the Glad Tidings site, the Union also picketed the general contractor with whom it concededly had a primary labor dispute, Lanco Corporation. The Board, through its own offices, dismissed a complaint against the Union with respect to the Lanco picketing, for the Board concluded said picketing was protected publicity picketing within the ambit of the second proviso of Section 8(b)(7) (C). 29 U.S.C. § 158(b)(7)(C). Construction Laborers International Union, Local 1140 (Lanco Corporation), 227 NLRB No. 182 (1977). The Union apparently argues that the Board's dismissal of an alleged Section 8(b)(7)(C) violation for activity directed at Lanco is inconsistent with its attempt to cite the Union for contempt in connection with Union activity directed at Underwood Constructors. This contention is without merit. The legality of primary activity against Lanco is not related to the question whether the Union's activity against Underwood constituted an attempt to unlawfully enmesh neutral employers in the Union's dispute with Lanco.
 
 
 [5]
 For example, the picket sign directed against Underwood Constructors at the Glad Tidings site read:
 UNDERWOOD CONSTRUCTORS, INC. REFUSES TO ABIDE BY THE PROVISIONS OF THE CLT&E HEALTH & WELFARE & PENSION TRUSTS. THIS DISPUTE WITH ABOVE NAMED EMPLOYER ONLY. LEONARD J. SCHAEFER, TRUSTEE.
 
 
 [6]
 In this regard, the Master stated that:
 . . . (T)he trust can hardly be considered a separate entity here even though that is the union's position. Leonard Schaefer is both an agent of the union and of the trust.
 The Union predicates its statement of the issue largely on the above language of the Master. Under the pertinent provisions of both the Labor Management Relations Act and the Employee Retirement Income Security Act of 1974, it is clear that trust funds for the benefit of employees are separate entities apart from labor organizations. A trustee of such a fund may also, however, be the agent of the union in other contexts. 29 U.S.C. § 1108(c)(3). See Curren v. Freitag, 432 F.Supp. 668, 672 (S.D.Ill.1977).
 Reading the quoted language in the context of the Master's report as a whole, we view the Master as concluding only that regardless of the designation on a picket sign, the secondary picketing at both the Reserve Center and Glad Tidings sites was attributable to the Union.
 
 
 [7]
 See 29 U.S.C. § 186(c)(5)(B)
 
 
 [8]
 The duty thus imposed on benefit plan trustees is similar to a trustee's fiduciary duty under traditional common law. See Bogert, Trusts and Trustees § 543, at 473-74